507 F.2d 358
 1974-2 Trade Cases 75,340
 SCM CORPORATION, Plaintiff-Appellant,
v.
XEROX CORPORATION, Defendant-Appellee.
 No. 122, Docket 74-1585.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 18, 1974.
Decided Nov. 4, 1974.
 
 Stephen R. Kaye, New York City (Proskauer, Rose, Goetz & Mendelsohn, Ronald S. Rauchberg, Robert S. Marin, New York City, Widett & Widett, Jerome Gotkin, W. Thomas Fagan, Boston, Mass., Jacobs, Jacobs & Grudberg, Ira B. Grudberg, David L. Belt, New Haven, Conn., on the brief), for plaintiff-appellant.
 Stanley D. Robinson, New York City (Kaye, Scholer, Fierman, Hays & Handler, Milton Handler, Michael Malina, Kenyon & Kenyon Reilly Carr & Chapin, Robert D. Fier, New York City, Cummings & Lockwood, John F. Spindler, John R. Murphy, Xerox Corporation, Stamford, Conn., on the brief), for defendant-appellee.
 Before FEINBERG, MULLIGAN and DANAHER,* Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 On July 31, 1973 SCM Corporation commenced an action against Xerox Corporation in the United States District Court for the District of Connecticut. The complaint, which takes up 46 printed pages in the appendix, basically charged Xerox with monopolizing throughout the world the skill and technology of plain paper copying and the manufacturing and marketing of plain paper copiers in violation of section 2 of the Sherman Act (15 U.S.C. 2). The complaint also charged a variety of unreasonable restraints of trade in violation of section 1 of the Sherman Act (15 U.S.C. 1). These include restrictive covenants, the acquisition of a large number of controlling patents in the field of xerography, and cartel arrangements with foreign corporations. The complaint also charged violations of section 7 of the Clayton Act (15 U.S.C. 18) in the Xerox acquisition of stock and assets of corporations competing in the field. The complaint sought monetary damages of threefold the amount of $145 million, plus permanent injunctive relief. On July 31st SCM also moved for preliminary injunctive relief. On September 14, 1973 Xerox moved to strike the antitrust claims on the ground that the complaint was prolix and in violation of Fed.R.Civ.P. 8's requirement that a pleading contain 'a short and plain statement of the claim' and that pleadings shall be 'simple, concise, and direct.' The Hon. Jon O. Newman granted the Xerox motion on October 9, 1973. On November 5, 1973 SCM filed an amended complaint which substantially repeated the same antitrust claims albeit in an abbreviated manner. Xerox's answer, filed on November 12, 1973, contained denials, defenses and counterclaims; on the same day Xerox made a demand for a jury trial.
 
 
 2
 On November 16, 1973 SCM moved under Fed.R.Civ.P. 42(b) for an expedited separate trial of the antitrust issues and a stay of certain patent issues as well as those issues raised by the counterclaims. As an alternative to severance SCM renewed its motion for a preliminary injunction. On January 3, 1974 Judge Newman denied the motion for a severance, finding that there was an insufficient showing that an early adjudication of liability would promote the efficient conduct of the trial. A briefing schedule was set for the preliminary injunction motion. In Pre-Trial Ruling No. 6, filed on April 19, 1974, the court denied SCM's motion for preliminary injunctive relief. This is an appeal by SCM from the denial of that motion.
 
 
 3
 * The case below undoubtedly presents substantial questions of law and fact which will take months of discovery and trial. However, the question posed for us is narrow and we intimate no view and make no prognosis as to SCM's ultimate prospects of success on the substantive issues raised. While the issue here is narrow, it is also somewhat unique in that the private antitrust plaintiff here is seeking preliminary injunctive relief in what appears to be basically a section 2 Sherman Act case. In view of the worldwide scope of the alleged monopolization and the intricate and complicated accumulation of patents, licenses, and technological expertise charged, there is no precedent for such relief at this stage of the litigation.[1] The question is also unique in that Xerox in effect demurred to the motion, which sonstitutes an admission for the purposes of the motion that SCM would succeed on the merits of its antitrust claim. As the court below recognized, it was also unusual for the district judge to deny the motion without conducting an evidentiary hearing, although such is not unheard of in this circuit, see Redac Project 6426, Inc. v. Allstate Insurance Co., 402 F.2d 789 (2d Cir. 1968).
 
 
 4
 We commence with the proposition that a district court's determination to deny a preliminary injunction will be overturned only when there has been a clear abuse of discretion. Stamicarbon, N.V. v. American Cyanamid Co., 506 F.2d 532, at 536 (2d Cir. 1974); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir.), cert. denied 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969); Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 35 (2d Cir. 1962). The right of a private litigant in an antitrust action to preliminary injunctive relief is provided for by statute, section 16 of the Clayton Act (15 U.S.C. 26), which states that such relief is available 'under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . . and (upon) a showing that the danger of irreparable loss or damage is immediate . . ..' The statute is merely declarative of ordinary equitable principles. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742-743 (2d Cir. 1953).
 
 
 5
 Those equitable principles are well established in this Circuit. Since Xerox has conceded liability for the purposes of the motion, SCM has only the burden of establishing the possibility of immediate irreparable harm. Pride v. Community School Bd., 488 F.2d 321, 324 (2d Cir. 1973). While SCM has urged that its function as a private attorney general in enforcing the antitrust laws of the United States entitles it to particular consideration, it admittedly cannot escape its burden of establishing the threat of irreparable harm. The statute so requires and we are not free to disregard it.[2]
 
 
 6
 Judge Newman found below that SCM had failed to make a sufficient showing of irreparable damage to justify a hearing and further that the relief it sought would alter the status quo beyond the function of a preliminary injunction. We find no abuse of discretion and affirm the denial of the relief sought.
 
 II
 
 7
 In paras. 49-53 of its amended complaint SCM listed the specific preliminary injunctive relief it sought. This relief was of three kinds:
 
 
 8
 (1) SCM sought to enjoin Xerox from maintaining any patent infringement action against SCM or any other claim here or abroad which might impede SCM's present and future efforts in the plain paper office copier field. SCM further sought a mandatory injunction granting it a license with respect to all United States and foreign patents and patent applications Xerox owns or controls.
 
 
 9
 (2) During the pendency of the action Xerox should be mandatorily enjoined to disclose its present short and long range plans for the manufacture and marketing of plain paper office copiers.
 
 
 10
 (3) Xerox should be enjoined against enforcing any restrictive employee covenants restraining its personnel from engaging in xerographic activities for any other company, following the termination of their employment with Xerox.
 
 
 11
 The opinion below considers each of these prayers for relief and the reasoning rejecting them is persuasive. The patent relief sought certainly does not preserve the status quo, which is the normal function of the preliminary injunction, Hamilton Watch Co. v. Benrus Watch Co., supra, 206 F.2d at 742; 7 J. Moore, Federal Practice P65.04(1) (2d ed. 1974), but creates a new status which never obtained between the parties.[3]
 
 
 12
 But there is further reason to find no abuse of discretion here. By letter dated March 8, 1974 Xerox agreed not to seek any preliminary injunction against SCM or its suppliers for the infringement of any patents concerning plain paper copiers; not to commence any patent infringement action concerning plain paper copiers without first giving ninety days' written notice to SCM; not to commence any patent infringement action against any end user of copiers manufactured or sold by SCM; and to grant SCM, during the pendency of suit, a 4% Royalty license under any Xerox patent covering the Van Dyk machine now marketed by SCM or the machine SCM is developing and expects to market in 1975. While these commitments are limited to the United States, Canada, and Latin America and are not worldwide, it is apparent that they undercut any claim of immediate irreparable harm.
 
 
 13
 The disclosure to SCM of the long and short range plans of Xerox is again hardly the simple maintenance of the status quo; quite the contrary, it is an irrevocable step because once the plans are revealed, their secrecy cannot later be restored if Xerox should prevail on the merits. The argument of SCM that if it fails to succeed ultimately on the merits the court could somehow protect the secrecy and confidentiality of the plans is unrealistic.
 
 
 14
 The injunction seeking the abrogation of personnel covenants which allegedly barred Xerox employees from serving competitors after termination of employment with Xerox, is again mooted by the March 8, 1974 letter of Xerox representing that no such contracts are in effect now and that none would be entered into during the pendency of this action.
 
 III
 
 15
 On appeal SCM further argues that while its prayer for injunctive relief did specify the three areas we have discussed, the amended complaint further contained the usual language 'and such other and further relief as this Court deems just and proper.' It is urged that the court below should have considered not only the particualar forms of relief sought in the amended complaint but any 'conceivable' forms of preliminary relief, including those set forth in SCM's brief.
 
 
 16
 There is authority holding that motions to dismiss a complaint for legal insufficiency under Fed.R.Civ.P. 12(b)(6) should not be granted if the court finds that 'some relief, not limited by the request in the complaint, can be granted.' Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 925-926 (2d Cir. 1968). However, the dismissal of a complaint and the denial of preliminary injunctive relief are not comparable. The very finality of the dismissal requires judicial scrutiny to determine if the complaint is salvageable, but requiring the court in a highly complex monopolization case to determine if conceivable alternate preliminary relief exists is unrealistic and is unsupported by authority.
 
 
 17
 The determination of Xerox not to contest the probable success of SCM on the merits was reasonably based on the expectation that the motion for preliminary relief was predicated on the specific relief sought in the amended complaint, to which Xerox affirmatively responded by concessions which basically provided the immediate security sought by SCM.
 
 
 18
 SCM argues that if any evidentiary hearing had been held it would have been able to make definite its unpleaded temporary remedies and further establish the threat of irreparable harm. This argument has some plausibility until the record is examined. On March 6, 1974, on the argument of the motion for the preliminary injunction, the trial court on several occasions explicitly advised SCM that the conducting of a protracted evidentiary hearing was not feasible unless SCM would provide some affidavit or offer of proof to support its continuing claim of irreparable damage.[4] None was forthcoming.
 
 
 19
 Indeed, the basic flaw in the SCM case here is its continuing failure to supply the necessary proof of a threat of irreparable harm. Its posture continues to be that the Xerox monopoly is so pervasive that it must be apparent that SCM is sorely and grievously afflicted. However, it is basic that equitable relief will not be granted where an adequate remedy at law exists. Money damages if determinable with a reasonable degree of certainty constitute such an adequate remedy. See Danielson v. Local 275, supra, 479 F.2d at 1037. The latitude granted the victim of antitrust violations in establishing his monetary damages has long been recognized. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 262-264, 66 S.Ct. 574,90 L.Ed. 1040 (1946); Columbia Pictures Industries, Inc. v. American Broadcasting Companies Inc., 501 F.2d 894 (2d Cir. 1974); William Goldman Theatres, Inc. v. Loew's, Inc., 69 F.Supp. 103, 105-106 (E.D.Pa.1946), aff'd, 164 F.2d 1021 (3d Cir.), cert. denied, 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742 (1948). Note that in the last-named case, the fact that plaintiff had not operated his business at all during the relevant period did not prevent the district court from awarding money damages in the form of probable lost profits.
 
 
 20
 SCM has claimed here that it has suffered monetary damages at least in the sum of $145 million and that it can establish such damages. When trebled this is by no means an insignificant sum, but there is no suggestion that Xerox will be unable to pay a damage verdict and there is no affidavit or other proof that SCM will perish in the interim.[5] In any event, if SCM can hereafter establish the threat of irreparable harm not otherwise readily compensable there is nothing to prevent it from then making application for specific injunctive relief.
 
 
 21
 In light of its failure to provide an appropriate basis to justify the conducting of an extensive and protracted evidentiary hearing, we find no abuse of discretion in the determination of the court below in denying the extraordinary relief which SCM has sought.
 
 
 
 *
 Senior Circuit Judge of the District of Columbia Circuit, sitting by designation
 
 
 [1]
 The only precedent for the grant of preliminary injunctive relief in a section 2 case is apparently Philadelphia World Hockey Club, Inc. v. Philadelphia Hockey Club, Inc., 351 F.Supp. 462 (E.D.Pa.1972), which involved an attack by a club in a new hockey league upon the 'reserve clause' of the established and entrenched National Hockey League. The issues there were clearly more precise than those faced by the court below. Moreover, the need for immediate relief was emphasized by findings of fact (based in part upon affidavits) that absent the relief the new league would be destroyed economically. Id. at 496
 
 
 [2]
 We also note that the Federal Trade Commission had proceeded against Xerox, largely on the same violations urged by SCM, some 6 months before the present action. FTC Dkt. 8909, filed January 16, 1973. As this court has recently noted in a comparable situation, this factor 'takes the ground from under appellants' argument that they are the vindicators of the 'public interest'.' Columbia Pictures Indus., Inc. v. American Broadcasting Cos., 501 F.2d 894, 898 (2d Cir. 1974)
 
 
 [3]
 SCM urges that there is an exception to the 'status quo' rule where the party seeking the relief has established the violation of a statute. Reliance is placed upon Danielson v. Local 275, 479 F.2d 1033 (2d Cir. 1973). The opinion in that case does not announce or rely upon any such rule. As we have already indicated, the injunction statute applicable here (15 U.S.C. 26) enlists general equitable principles. Every antitrust plaintiff perforce urges a breach of statute, so following the rule suggested by SCM would effectively eliminate the long-established equitable status quo concept, in derogation of the scheme of section 26
 Further, Danielson is clearly distinguishable from the case at bar. Danielson involved unlawful picketing plus physical harassment over a four month period, all of which was found by the Regional Director of the NLRB to constitute a violation of the National Labor Relations Act. The fact pattern there was simplistic compared to the alleged complex worldwide monopolization pattern here. The pre-picketing status quo clearly apparent and simply cured in Danielson is quite distinguishable from the dismantling of the colossal patent apparatus allegedly erected over a score of years.
 
 
 [4]
 Witness, for example, the following comments of Judge Newman at that hearing:
 One thing I am wondering is whether perhaps there is something you need to do in between the allegation of irreparable injury, which is where you (SCM) are at now, and the full development of a record of witnesses, which is what you contemplate. I am wondering whether you need to in some fashion particularize your claim of irreparable injury, because it's very easy for anybody to say there is going to be irreparable injury, and I am not sure that just saying that precipitates a full dress hearing.
 . . . .ing
 Now, I am a little concerned . . . whether there is not some obligation on the plaintiff seeking what is at least the unusual, if not unprecedented, remedy of a preliminary injunction in the Section 2 case to particularize the claim of irreparable injury, rather than standing on the somewhat conclusory allegation that, yes, we have been or will be irreparably injured, and what I'm wondering is whether your burden is not only to particularize your claim, but perhaps to make a rather extensive presentation by affidavit and offer of proof on what it is that ought to require this hearing.
 After all, many preliminary injunctions, in general, and in antitrust, in particular, have been resolved on affidavits. They have not been multi-week trials, and I am not sure that Xerox needs to accelerate its discovery and prepare witnesses and even come in prepared to cross examine your witnesses until there has been an adequate demonstration on affidavit that at least you have a precise claim of irreparable injury, rather than just the naked pleading.
 Vol. 2, Exhibits, pp. E 637-38, and E 677-78.
 
 
 [5]
 SCM relies on Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970) for the proposition that the ultimate collection of monetary damages does not mean that a plaintiff may not in the interim be irreparably damaged. That case however involved the cancellation of the Ford distributorship of a franchised dealer who had been in business for 20 years. Not only did interim injunctive relief sought there (the enjoining of the termination of the dealership) preserve the status quo, but the cut-off of the dealership would obviously have brought about an immediate and drastic financial peril to the entrepreneur. Here, SCM is now marketing plain paper copiers manufactured by Van Dyk and further indicates it will enter the plain paper copier field with its own product in 1975. The peril to it from a denial of the preliminary relief is clearly of a lesser magnitude than in Semmes. In any event, the claim of financial disaster is not supported by affidavit