SUGARHILL RECORDS LTD., Plaintiff,

v.

MOTOWN RECORD CORPORATION, MCA Distributing Corp., and Rick James, Defendants.

No. 83 Civ. 6176(SWK).

United States District Court, S.D. New York.

Sept. 7, 1983.

Krieger, Ferrara, Flynn & Catalina by Harold Krieger, New York City, for plaintiff.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey by Alan M. Gelb, New York City, for defendant Motown Record Corp.

Burns Summit Rovins & Feldesman by Glenn S. Goldstein, Barry Jay Reiss, New York City, for defendant MCA Distributing Corp.

Gross, Shuman, Brizdle, Laub & Gilfillan by Lesley Greenbaum, Joel R. Strote, Buffalo, N.Y., for defendant Rick James.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Sugarhill Records Ltd. ("Sugarhill") commenced this action against Motown Record Corporation ("Motown"), MCA Distributing Corporation ("MCA"), and Rick James seeking monetary and injunctive relief. Sugarhill asserts a claim for misdescription of goods under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as various pendent state law claims, including a claim for tortious interference with contractual relationships. Sugarhill's claims arise out of the production of a record album entitled "Cold Blooded" containing the recorded performances of Rick James and others. James is also the producer, Motown the manufacturer, and MCA the distributor, of the album. One of the cuts on the album, "P.I.M.P. the S.I.M.P.", includes the performance of three performers who are members of a group known as "Grand Master Flash and the Furious Five." Grand Master Flash and the Furious Five, and each of its six members, are under an exclusive recording agreement with Sugarhill. The album jacket and sleeve indicate that "P.I.M.P. the S.I.M.P." features Grand Master Flash, and that "Grand Master Flash appears courtesy of Sugarhill Records Ltd." Sugarhill contends that these statements are untrue. The action is before this Court upon Sugarhill's motion for a preliminary injunction enjoining defendants from selling "Cold Blooded" with the designation "Grand Master Flash" or with the recorded performance of any members of "Grand Master Flash and the Furious Five." This Court has reviewed the papers submitted herein and the arguments made to the Court at the hearing on the within motion held on August 22, 1983. For the reasons stated below, Sugarhill's motion is denied.

### FACTS

Sugarhill is a corporation engaged in producing and manufacturing phonograph records. In 1980 Sugarhill entered into an exclusive recording agreement with six individuals: Nathaniel Glover, Melvin Glover, Keith Wiggins, Guy Todd Williams, Joseph

Saddler, and Eddie Morris. These six individuals are performing artists who comprise the performing group known as "Grand Master Flash and the Furious Five."

Grand Master Flash and the Furious Five is an up and coming group in music today. Its recent record albums, produced under the aegis of Sugarhill, have received widespread critical acclaim and have sold well— over two million copies of the group's albums have been sold. Grand Master Flash and the Furious Five is known for its performance of "rapping" —rhythmically spoken lyrics over a musical background.

Motown is a corporation engaged in manufacturing phonograph records. MCA is a corporation engaged in distributing the products of Motown.

Rick James is a well-known musical artist. James is a songwriter, composer, producer, and performer. His albums have received widespread critical acclaim and have sold very well—over six million copies of his albums have been sold.

James recently composed the music and wrote the lyrics for nine songs. Those songs are contained on an album entitled "Cold Blooded." James sings all nine songs on the album. Three of the songs also feature guest vocal appearances: Smokey Robinson appears with James in "Ebony Eyes"; Billy Dee Williams appears in "Tell Me (What You Want)"; and Melvin Glover, Guy Todd Williams, and Eddie Morris appear in a rap in "P.I.M.P. the S.I.M.P."

"Cold Blooded" has been recorded and is available on phonograph records and cassette tapes. The album jacket, the record sleeve, and the label insert with the cassettes credit the performance of all the featured artists. The performances of Glover, Williams, and Morris is noted as that of "Grand Master Flash." The record sleeve further indicates that "Grand Master Flash appears courtesy of Sugarhill Records Ltd."

Approximately 546,000 copies of the album have been pressed and distributed to retail shops across the country for sale to the public. The record on this motion does not indicate how many tapes have been distributed to date.

## DISCUSSION

Sugarhill has moved this Court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The standards governing the issuance of a preliminary injunction are well established in this Circuit. A preliminary injunction will issue only upon

a showing of (a) irreparable harm *and* (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (emphasis added); *see also, e.g., Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358–59 (2d Cir.1976); *Sonesta Int'l Hotels Corp. v. Wellington Assocs.,* 483 F.2d 247, 250 (2d Cir.1973).

As the above-quoted standard indicates, irreparable harm must be shown under either standard. *See, e.g., Triebwasser & Katz,* 535 F.2d at 1359. Therefore, this Court will first address Sugarhill's showing with respect to irreparable harm.

Sugarhill alleges in this action that the notation on "Cold Blooded" that "P.I.M.P. the S.I.M.P." features Grand Master Flash is untrue. In particular, Sugarhill alleges that the name Grand Master Flash refers to one individual, Joseph Saddler. The three performers featured in "P.I.M.P. the S.I.M.P.", Melvin Glover, Guy Todd Williams, and Eddie Morris, are alleged to be members of the Furious Five, separate and distinct from Grand Master Flash. Defendants dispute this allegation, and even some of Sugarhill's own documents tend to belie its allegation. For example, one of Sugarhill's communications with defendants pre-dating this lawsuit refers to "those individuals constituting Grand Master Flash." However, this Court need not resolve this factual dispute in order to decide the issues currently before it, and this Court chooses to

express no opinion as to its ultimate disposition. Sugarhill's allegations are, therefore, taken as uncontroverted solely for the purpose of disposing of this motion.

Sugarhill further alleges that the notation that "Grand Master Flash appears courtesy of Sugarhill Records Ltd." is untrue. Here again the affidavits submitted evince the existence of a serious factual dispute. Defendants allege by affidavit that they obtained the express oral consent of Sugarhill through two individuals at Sugarhill. Sugarhill, on the other hand, has submitted the affidavits of those two individuals wherein each forswears giving any consent for the appearance of Grand Master Flash or any of the members of Grand Master Flash and the Furious Five on the album "Cold Blooded." Once again, however, this Court need not resolve this factual dispute in order to decide the issues currently before it, and will express no opinion as to its ultimate resolution. For the purposes of disposing of this motion, Sugarhill's contention is taken as true and uncontroverted.

█ Assuming, therefore, for the disposition of this motion, that the album "Cold Blooded" incorrectly claims the appearance, with consent, of Grand Master Flash, this Court must determine what irreparable harm, if any, is caused by that erroneous notation. Sugarhill alleges, through the affidavits of its president, Joseph Robinson, that the existence of another album on the market claiming to feature Grand Master Flash will dilute the market for Sugarhill's soon to be released record album of Grand Master Flash and the Furious Five entitled "Greatest Messages." (Affidavit of Joseph Robinson dated August 16, 1983 ("Robinson I"), ¶¶ 6, 7; Affidavit of Joseph Robinson dated August 20, 1983 ("Robinson II"), ¶¶ 3, 4). Furthermore, Robinson alleges that consumers who purchase "Cold Blooded" in order to obtain the performance of Grand Master Flash will be disenchanted upon discerning that Grand Master Flash does not appear on the album with a resultant injury to the reputations of Grand Master Flash and Sugarhill (as the record company that produces "legitimate" Grand Master Flash recordings). (Robinson I, ¶ 7; Robinson II, ¶¶ 4–6)

The lynchpin, therefore, of Sugarhill's case for a preliminary injunction is the likelihood that consumers will purchase "Cold Blooded" in order to obtain the recorded performance of Grand Master Flash. Defendants, without admitting liability, have offered to remove all references to Grand Master Flash and Sugarhill Records from future production of the album and tape. This willingness to remedy an arguably misleading package will alleviate any irreparable harm which might have been caused Sugarhill. See, e.g., Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc., 443 F.Supp. 291, 307 (S.D. N.Y.1977) ("but ... it has been removed from all future packaging") (emphasis added); CBS, Inc. v. Gusto Records, Inc., 403 F.Supp. 447, 449 (M.D.Tenn.1974) ("Defendant ... has offered to affix a decal to each of the albums in question, clarifying the contents of the album."). Once all reference to Grand Master Flash has been removed from the album, it is very unlikely that any consumer will purchase "Cold Blooded" in order to obtain the recorded performance of Grand Master Flash.

Furthermore, Sugarhill has failed to show any likelihood that consumers will purchase "Cold Blooded" in order to obtain the recorded performance of Grand Master Flash. Robinson's affidavits assume, without any support, that consumers will purchase the album for that reason. For example, Robinson speaks of the harm that will occur "when various fans of (Grand Master Flash) purchase the record and discover that he is not in fact included thereon." (Robinson I, ¶ 7) Sugarhill has failed, even in its affidavits, to sufficiently prove a causal relation between defendants' conduct and any irreparable harm to Sugarhill. See, e.g., Diversified Mortgage Investors v. U.S. Life Title Ins. Co., 544 F.2d 571, 576 (2d Cir.1976) (reversing grant of preliminary injunction because any irreparable harm not causally related); Robinson-Pitts v. Board of Education, 544 F.Supp. 187, 189 (E.D.N.Y.1982) (plaintiff denied preliminary injunction because affidavits "failed to adequately dem-

onstrate that she will suffer irreparable harm").

In any event, this Court finds it highly unlikely that a consumer, particularly one as sophisticated as the Grand Master Flash fan Sugarhill posits (Robinson II, ¶ 4), would purchase "Cold Blooded" solely to obtain the recorded performance of Grand Master Flash. Only approximately twenty seconds out of the forty-five minutes of recordings contain the performances of Glover, Williams, and Morris. Although that fact is not readily apparent to the consumer who only can see the jacket of the album, the jacket does clearly limit the notation of a Grand Master Flash appearance to the recording of "P.I.M.P. the S.I.M.P." Thus, the consumer perforce realizes that Grand Master Flash is *featured* in only one song out of the nine contained on the album. This Court finds that it is unlikely that a consumer will purchase the entire album to obtain the recording of a featured performer on one cut thereon. Indeed, the fact that Grand Master Flash is noted as appearing in only one song on the entire album distinguishes this case from others where whole albums that were sold contained the recorded performance of the disputed artist. *Compare, e.g., Yameta Co. v. Capitol Records, Inc.*, 279 F.Supp. 582 (S.D.N.Y.) (Jimi Hendrix noted as major artist when, in truth, only back-up musician), *rev'd*, 393 F.2d 91 (2d Cir.1968) (vacating preliminary injunction); *CBS Inc. v. Springboard Int'l Records*, 429 F.Supp. 563 (S.D.N.Y.1976) (outdated Charlie Rich songs passed off as contemporary; "Patti LaBelle and the Bluebelles" songs passed off as those of contemporary group "LaBelle").

Since it is not the entire album that is being passed off as the recording of another in this case, this Court finds that irreparable harm does not follow automatically from the assumed finding of mislabelling. *Compare, e.g., In re Vuitton et Fils S.A.*, 606 F.Supp. 1, 4 (2d Cir.1979) (trademark infringement and product piracy creating a likelihood of consumer confusion "constitutes, in and of itself, irreparable injury"). In the present case, less than the full product is involved and consumer confusion is unlikely.

Finally, this Court finds that Sugarhill's allegations of irreparable harm are entirely speculative. For example, Robinson states that "I am *afraid* that the release of Rick James's (sic) album . . . will cause many record buyers to have resentment and antagonism toward our record company." (Robinson II, ¶ 4) (emphasis added) The alleged saturation of the market for Grand Master Flash albums, diluting sales of "Greatest Messages" scheduled for imminent release, is likewise pure speculation. This case is very similar to *Ideal Toy Corp.*, 443 F.Supp. 291. In that case, the defendant was about to release on the market certain toys fashioned after characters in the movie "Star Wars" and licensed by the owner of the trademark in that name. The defendant claimed that toys marketed by the plaintiff under a different title but in a similar motif infringed its trademark rights and would dilute the market for its soon to be released toys. The court held that this pure speculation was insufficient to establish irreparable harm and refused to issue a preliminary injunction. 443 F.Supp. at 309–10.

It appears that any harm occasioned by defendants' labelling can be redressed by money damages, should liability ultimately be established—an issue this Court expresses no opinion on. There is no allegation, nor could there be, that defendants will be unable to pay such a judgment should it ensue. Furthermore, should it develop that Sugarhill can ultimately prove damages that are not calculable, a permanent injunction may be appropriate even though this Court finds that a preliminary injunction is inappropriate.

■ One further point requires discussion. This Court is cognizant of the fact that it is unusual to dispose of motions for preliminary injunctions without an evidentiary hearing. *See, e.g., Forts v. Ward*, 566 F.2d 849 (2d Cir.1977); *Dopp v. Franklin Nat'l Bank*, 461 F.2d 873 (2d Cir.1972); *SEC v. Frank*, 388 F.2d 486 (2d Cir.1968). This is especially true where affidavits evince disputed issues of fact. *Forts v. Ward*, 566 F.2d at 851. However, this Court also notes

that an evidentiary hearing is not required in all cases to dispose of preliminary injunction motions. *See, e.g., SCM Corp. v. Xerox Corp.,* 507 F.2d 358 (2d Cir.1974); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir.1970) (Friendly, J.); *Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551 (2d Cir.1970) (Weinfeld, J.); *Redac Project 6426, Inc. v. Allstate Ins. Co.,* 402 F.2d 789 (2d Cir.1968) (Feinberg, J.). As then Judge Feinberg stated in *Redac,*

> there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.

402 F.2d at 790. This Court finds that this is an appropriate case for disposition on the papers submitted.

First, as discussed above, Sugarhill has not made a sufficient showing of irreparable harm. This case is therefore like *SCM Corp.,* 507 F.2d 358. In that case, the Second Circuit affirmed the denial of a motion for a preliminary injunction without an evidentiary hearing because the plaintiff had "failed to make a sufficient showing of irreparable injury to justify a hearing." 507 F.2d at 361.

■ Furthermore, although there are issues of fact in this case, those issues are not relevant to the determination of the within motion. For the purpose of disposing of this motion, therefore, there are no factual disputes. Resolution of a motion for a preliminary injunction without an evidentiary hearing is appropriate where there are no relevant issues of fact for which an assessment of credibility is essential. *See, e.g., Herbert Rosenthal Jewelry Corp.,* 428 F.2d 551; *Factors Etc., Inc. v. Pro Arts, Inc.,* 496 F.Supp. 1090 (S.D.N.Y.1980).

Finally, the parties were presented with an opportunity to present oral testimony but chose instead to rely on their submitted affidavits. All parties submitted affidavits on this motion. Sugarhill even submitted a second set of affidavits, apparently in response to defendants' submissions. *See e.g., Semmes Motors, Inc.,* 429 F.2d at 1197. Sugarhill did offer to present oral testimo-

ny at the hearing on the within motion. (Transcript of August 22, 1983, hearing ("Tr."), pp. 6, 44) The offered testimony, however, was that of Diane Moore and related to the issue of the alleged consent given to defendants. As discussed above, that issue is not relevant to the Court's determination herein. Sugarhill was not restricted or prevented from presenting oral testimony at that hearing. Moreover, when Sugarhill was discussing the issue of market saturation, it specifically relied on the submitted affidavits. As counsel for Sugarhill noted "Mr. Robinson says *in his affidavit* .... You can't come out with one album on top of another with the same people." (Tr., p. 46) (emphasis added) Finally, Sugarhill's offer of testimony was a far cry from an objection to the Court's disposing of this motion on the papers submitted. *See, e.g., Semmes Motors, Inc.,* 429 F.2d at 1205 n. 11.

In sum, this Court concludes that plaintiff has failed to meet its burden of proof in establishing the possibility of irreparable harm. Accordingly, the application for a preliminary injunction is denied. The parties are to proceed with discovery forthwith with an eye to an expedited trial on the merits in this action.

SO ORDERED.