**Julius W. ERVING, Plaintiff,**

v.

**The VIRGINIA SQUIRES BASKETBALL CLUB, a Limited Partnership, Defendant.**

**Civ. A. No. 72 C 765.**

United States District Court, E. D. New York.

Oct. 4, 1972.

Phillips, Nizer, Benjamin, Krim & Ballon, by Neil A. Pollio and Sidney D. Bluming, New York City, for plaintiff.

Roth, Carlson, Kwit, Spengler & Goodell, by Clark J. Gurney, New York City (Charles E. Matthews, Jr., White Plains, N. Y., of counsel), for defendant.

## MEMORANDUM OF DECISION

NEAHER, District Judge.

By order dated October 2, 1972, the parties were directed to submit the dispute involved in this action to arbitration, and the plaintiff was preliminarily enjoined from playing professional basketball for clubs or teams other than the defendant's pending the arbitrator's award. That disposition was made for the following reasons.

Plaintiff, a professional basketball player, commenced this action to rescind his contract with the defendant and to recover claimed damages of $308,800 by reason of alleged concealment and false representations which induced him to enter the contract. There is no dispute that the contract, entered into March 30, 1971, by its terms requires the plaintiff to play basketball for the defendant for a period of four years commencing October 1, 1971, for total compensation of $500,000. The contract also contains a specially inserted provision which requires the defendant to pay the plaintiff either 50% or 100% of that gross compensation in the event of injury disabling him from playing basketball, de-

pending upon whether it occurred in the first two years or the last two years of the contract.

The contract further contains the following arbitration clause:

"13. Arbitration. In the event of any dispute arising between the PLAYER and the CLUB relating to any matter or thing whatever, whether or not arising under this Contract, or concerning the performance or interpretation thereof, such dispute shall be determined by arbitration before the Commissioner of the American Basketball Association, or a person designated by such Commissioner in writing for such purpose, acting as Arbitrator. The Arbitrator shall determine by whom and in what proportion the cost of arbitration shall be paid. The PLAYER and the CLUB hereby grant such Arbitrator full power to determine such dispute in such manner as he shall direct, and under such rules of procedure as he shall in his sole discretion adopt, and his decision shall be final, binding and conclusive and may be enforced in any court, state or Federal, having competent jurisdiction. Demand for arbitration hereunder shall be made by notice in writing given to the other party and to the Commissioner of the ASSOCIATION. Notwithstanding the foregoing, the CLUB shall have the right in its sole discretion to institute judicial proceedings for the purpose of obtaining an injunction or other equitable relief pursuant to paragraph 5 hereof."

The question of the court's jurisdiction having been settled (see Memorandum and Order, 349 F.Supp. 709, dated September 19, 1972), the defendant filed its answer and counterclaim and accompanying application for a preliminary injunction. The counterclaim set forth the admittedly executed written agreement between the parties and sought an injunction restraining the plaintiff from playing basketball and engaging in relat-

ed activities for any other professional club in breach of the contract. The answer also raised affirmatively the issue of the plaintiff's right to maintain this action "unless and until arbitration is had in accordance with the agreement" and the provisions of the Federal Arbitration Act ("Act"), 9 U.S.C. § 1 et seq. The parties, by their counsel, having convened in court for a hearing on the application for a preliminary injunction, defendant's counsel represented that defendant was ready to proceed with arbitration of the dispute involved in this action and requested that the action be stayed pending arbitration.

The court is of the opinion that defendant is clearly entitled to such relief. The broad arbitration clause quoted above plainly encompasses the dispute between the parties. The plaintiff's claim in essence is that he was fraudulently induced to enter into the agreement with defendant because of untrue representations by a disloyal agent who acted with the knowledge and participation of the defendant. Additionally, he claims, the defendant reneged on a promise to provide him with a personal guarantee of his compensation by Earl Foreman, the president of defendant's general partner. Basic to the plaintiff's claim is the contention that he was worth double the compensation stipulated in his contract—a value he derived from a five-year contract he entered into with the Atlanta Hawks of the National Basketball Association on or about April 9, 1972, prior to discovery of the facts he now claims constitute fraud.

It has been authoritatively established in this Circuit that a claim of fraud in the inducement of a contract is an issue referable to arbitration under § 3 of the Act. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), aff'g 360 F.2d 315 (2 Cir. 1966). In such circumstances the court's duty is clear. "Section 3 requires a federal court in which suit has

been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Id.* at 400, 87 S. Ct. at 1804. The aim is, of course, to effectuate "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Id.* at 404, 87 S.Ct. at 1806.

■ Although the contract involved herein is one for personal services, plaintiff is not entitled to the exemption specified in § 1 of the Act. His employment may in no sense be classed with that of persons employed as seamen, railroad employees "or any other class of workers engaged in foreign or interstate commerce." The latter clause has been "generally limited . . . to employees, unlike [plaintiff], involved in, or closely related to, the actual movement of goods in interstate commerce." Dickstein v. duPont, 443 F.2d 783, 785 (1 Cir. 1971).

■ There is no question, however, that the contract evidences "a transaction involving commerce" within the meaning of § 2 of the Act and is thus subject to enforcement insofar as it provides for arbitration. As pointed out in *Dickstein, supra,* "the creation of an employment relationship which involves commerce is a sufficient 'transaction' to fall within section 2 of the Act." *Id.* at 785. Professional basketball like "[p]rofessional baseball is a business and it is engaged in interstate commerce." Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 728 (1972).

■ Nor can it be seriously claimed, as plaintiff urged, that defendant was barred from moving to compel arbitration on the grounds of waiver or laches. Although the action was commenced on June 9, 1972, it was not until August 9

that serious questions were presented with respect to this court's jurisdiction over defendant. Promptly after the determination of those questions defendant filed its answer on September 22, 1972 and moved for a stay at the hearing ten days thereafter. In *Dickstein, supra,* the court flatly rejected a similar waiver argument (443 F.2d at 785):

> Finally appellant raises a charge of default on the part of duPont in failing to file a formal complaint in arbitration until six months after this suit was commenced. This court's decision in Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968), where an 18-month lapse between the filing of the action and the motion for a stay was held insufficient to constitute waiver or default, supports a contrary conclusion.

■ The court is satisfied that arbitration offers the best hope of a speedy resolution of the dispute between the parties. It notes, however, that the recently appointed Commissioner of the American Basketball Association, Robert S. Carlson, Esq., is listed as a partner of the law firm representing the defendant and that the complaint alleges that plaintiff's agent in the contract negotiations "acted on behalf and in the interest of the defendant and the American Basketball Association . . . ." Under the circumstances arbitration should proceed before a neutral arbitrator and the order so provides.

■ Arbitration may be futile, however, if the status quo is not preserved pending the arbitrator's determination. "The status quo has been frequently defined as the last uncontested status which preceded the pending controversy." Flood v. Kuhn, 309 F.Supp. 793, 798 (S. D.N.Y.1970), aff'd 443 F.2d 264 (2 Cir. 1971), aff'd 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972). Here, it appears that the last uncontested status predated plaintiff's April 9th contract with the Atlanta Hawks. Since that

time he has, pursuant to that contract, practiced with the Hawks, been photographed in their uniform, played in Hawks' exhibition games and instituted suit in a Georgia state court to compel the Hawks to permit him to play for them as the contract provides. The very purpose of the arbitration is to determine whether defendant is exclusively entitled to plaintiff's unique services. It is clear that the activities described may well jeopardize the enforcement of any award in favor of defendant.

As Judge Weinfeld pointed out in Albatross S. S. Co., Inc. v. Manning Bros., Inc., 95 F.Supp. 459, 463 (S.D.N.Y. 1951):

> The Courts are not limited in their equity powers to the specific function of enforcing arbitration agreements but may exercise those powers required to preserve the status quo of the subject matter in controversy pending the enforcement of the arbitration provision. To rule otherwise would in effect permit a party to take the law into its own hands while the proceeding is carried on as a result of the specific direction of the Court.
>
> The purpose of the Arbitration Act as set forth in the House Committees Report " * * * is simply to make the contracting party live up to his agreement * * *." It would be an oddity in the law if the Court, after compelling a party to live up to his undertaking to arbitrate, had to stand idly by during the pendency of the arbitration which it has just directed and permit him to assert his "right to breach a contract and to substitute payment of damages for non-performance." The stay is an incident of the power to enforce the agreement to arbitrate.

This sound reasoning is equally applicable here and furnishes the basis for restraining the plaintiff from breaching his contract with defendant pending the arbitration.

The order dated October 2, 1972 was issued in accordance with the foregoing.