ROGERS, BURGUN, SHAHINE & DESCHLER, INC., Plaintiff,

v.

DONGSAN CONSTRUCTION CO., LTD., Defendant.

No. 84 Civ. 7984 (SWK).

United States District Court, S.D. New York.

Nov. 30, 1984.

Satterlee & Stephens by Robert M. Callagy, Peter Grossman, New York City, for plaintiff.

R. Paul Cater, Fort Lee, N.J., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon plaintiff's motion for a preliminary injunction enjoining defendant from calling a certain Letter of Guarantee for payment and upon defendant's motion to stay these proceedings pending arbitration. For the reasons stated below, both motions are granted.

## —BACKGROUND—

Rogers, Burgun, Shahine & Deschler, Inc. ("RBSD") is a New York corporation engaged in business as architectural designers of hospitals.

Dongsan Construction Company, Ltd. ("Dongsan") is a Korean corporation, with offices in New Jersey, engaged in business as general contractors in construction projects.

In 1982, Saudi Arabia undertook to build a hospital in Jubail. Dongsan secured the main contract on this project. Dongsan subcontracted a portion of the architectural and engineering design work on the project to RBSD (the "Subcontract").

Under the Subcontract, RBSD agreed to perform certain services, some of which RBSD, in turn, subcontracted to other entities. In return for those services, Dongsan agreed to pay RBSD some $2,596,086.

Dongsan further agreed to pay RBSD twenty per cent of that amount ($519,217) in advance of RBSD's performance. In order to secure this advance payment, RBSD provided Dongsan a Letter of Guarantee from Bank Al-Jazira in the full amount of the advance payment. The amount guaranteed by this letter was to decrease periodically commensurate with the percentage of work performed by RBSD and paid for by Dongsan.

The Subcontract also provided in broad terms for resolution of disputes by arbitration in Paris, France, under the rules of Conciliation and Arbitration of the International Chamber of Commerce.[1]

RBSD has performed some of the services required by the Subcontract and Dongsan has paid RBSD for that work. Pursuant to the terms of the Letter of Guarantee, the amount currently secured is $155,766. There have been occasional disputes during the course of RBSD's performance regarding changed specifications, new demands, and delays in performance. These disputes, for the most part, were resolved amicably by the parties and a modification of the Subcontract agreed to on August 22, 1984. The modification essentially established a firm, detailed schedule for the completion of performance under the Subcontract. The modification also provides that "[e]xcept as expressly provided herein, both parties reserve all rights under the Subcontract and the Subcontract remains unmodified and in full force and effect." The modification in no way alters the dispute resolution mechanism set out in Article XVI of the Subcontract.

Thereafter, a dispute arose with respect to RBSD's performance in accordance with the schedule set forth in the August 1984 modification. RBSD claims that the dispute concerns a very small portion of the

---

1. Article XVI of the subcontract provides as follows: "If at any time either party considers that any question, dispute or difference whatsoever has arisen between the parties herein in relation to or in conjunction with this Agreement then that party may give to the other party notice in writing of the existence of such question, dispute or difference and, unless it shall have been amicably resolved within one month from the date of such notice, the same shall be referred to arbitration to be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce, unless otherwise agreed, in Paris, France."

work performed or owing. On September 16, 1984, Dongsan notified RBSD that it intended to complete certain of RBSD's obligations itself, effecting a partial termination of the Subcontract as modified. Additionally, Dongsan indicated that it would withhold the remaining balance due RBSD under the Subcontract to set-off the anticipated expenses in completing those parts of RBSD's services it had terminated.

RBSD claims that it has substantially performed all of its obligations due to date, that it is owed some $752,865 for actual and tendered performance, and that it is entitled to the release of the remaining $155,766 held by way of the Letter of Guarantee as security.

RBSD filed the complaint herein on November 5, 1984, alleging breach of contract by Dongsan and seeking *inter alia* the $908,631 allegedly owed RBSD by Dongsan and a preliminary injunction enjoining Dongsan from calling the Letter of Guarantee. By Order to Show Cause dated November 5, 1984, RBSD moved this Court for the preliminary injunction, pursuant to Fed.R.Civ.P. 65. The Court thereby also entered a temporary restraining order against Dongsan enjoining it from calling the Letter of Guarantee. At the request of, and with the consent of, Dongsan, the hearing scheduled on that motion was adjourned from November 13 to November 21, 1984, and the temporary restraining order continued for that period.

On November 21, 1984, Dongsan filed its motion to dismiss or stay this action pending arbitration of the disputes herein.[2]

2. Dongsan actually styled its motion one to dismiss on various grounds all apparently related to the agreement to arbitrate albeit without requesting that such arbitration be held. The Court expects that Dongsan will pursue its rights to arbitration (as discussed in the text) and therefore construes this motion as one for a stay pending arbitration.

3. By Order that date, this Court extended the temporary restraining order for good cause (to allow for the disposition of the motions).

4. The Court recognizes that it is somewhat unusual to dispose of motions for a preliminary injunction without an evidentiary hearing. *See,*

On November 21 this Court held a hearing on both motions.[3] Based upon the affidavits and memoranda submitted, and upon counsel's arguments at that hearing, the Court finds that both motions should be granted.[4]

## —DISCUSSION—

### Dongsan's Motion for Stay

■ For years, courts were hostile to agreements which called for arbitration. *See* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924). That hostility was reversed by the enactment of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The enactment of the Arbitration Act reflected the new policy in favor of resolving disputes by arbitration in order "to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974) (*quoting* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). That strong public policy in favor of dispute resolution by arbitration extends to international contracts. *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512, 516 (2d Cir.1975). Indeed, specifically to encourage Americans engaged in international commerce to submit their commercial disputes to arbitration, Congress adopted and implemented the Convention of Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. § 201 *et seq.* (the "Convention"). *Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F.Supp. 1, 14 (S.D.N.Y.), *aff'd*, 489 F.2d 1313 (2d Cir.1973), *cert.*

*e.g., Forts v. Ward*, 566 F.2d 849 (2d Cir.1977). The Court, however, expected that the hearing on November 21 would be an evidentiary hearing. The parties chose not to offer testimony at that hearing and to proceed by way of argument by counsel; therefore, they should not be heard to cry now, or at any future date, that they were not provided an opportunity to produce testimony at an evidentiary hearing. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 n. 11 (2d Cir.1970); *Sugarhill Records Ltd. v. Motown Records Corp.*, 570 F.Supp. 1217, 1221–22 (S.D.N.Y.1983).

*denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974); *see also Scherk,* 417 U.S. at 520 n. 15, 94 S.Ct. at 2457 n. 15.

■ Against this background favoring arbitration, we must decide whether this dispute between RBSD and Dongsan is subject to arbitration. At the outset, it is clear that the subcontract involved herein is a "contract evidencing a transaction involving commerce" within the meaning of section 2 of the Arbitration Act, 9 U.S.C. § 2. As such, it falls under the Convention, 9 U.S.C. § 202, and is enforceable in this Court.[5] 9 U.S.C. § 201.

Section 206 of the Arbitration Act provides, in relevant part, as follows:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

9 U.S.C. § 206. Moreover, section 3 of the Act provides for a stay of court proceedings until the arbitration is completed.[6] 9 U.S.C. § 3. Accordingly, if this dispute is governed by the arbitration clause contained in the subcontract, this Court must stay these proceedings and let the parties proceed to arbitrate. *See McCreary Tire & Rubber Co. v. Ceat S.p.A.,* 501 F.2d 1032, 1036–37 (3d Cir.1974) (stay not discretionary); *cf., Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449 (reversing denial of stay without discussion of discretion).

The arbitration provision of the Subcontract is very broad. It provides that *"any* question, dispute or difference *whatsoever* ... in relation to or in conjunction with this Agreement ... *shall* be referred to arbitration."* It cannot seriously be claimed that the dispute here is not within that clause.

■ Plaintiff argues that the arbitration provision of the Subcontract is optional, not mandatory. Plaintiff bases this argument on the following language: "that party *may* give to the other party notice in writing of the existence of such question, dispute or difference" (emphasis added).

It is clear that Article XVI envisions arbitration of disputes that cannot be resolved amicably. Article XVI is entitled "Arbitration." Furthermore, Article XVI continues from the language quoted above as follows: "unless it [the dispute] shall have been amicably resolved within one month from the date of such notice, the same *shall* be referred to arbitration" (emphasis added). This is not language creating an option. Moreover, Dongsan did notify RBSD in writing of its intent to partially terminate the Subcontract. Thereafter, several communications were exchanged attempting to resolve this dispute amicably. Thus, the Court does not agree that these provisions are optional, and finds that this dispute is governed by Article XVI, the arbitration provisions of the Subcontract.

Plaintiff's only other claim in opposition to Dongsan's motion to stay is that Dongsan has not proceeded to arbitration and RBSD chooses not to proceed there either. Essentially, therefore, RBSD is waiving its right to enforcement of the arbitration provision and asserting that Dongsan has waived its right, too, by failing to commence the arbitration.

■ Dongsan moved to stay or dismiss this action relying on the arbitration provision in its first court filing in this action.[7] This hardly evinces an intent on Dongsan's part to waive its right to arbitrate this dispute. *See I.T.A.D. Assocs., Inc. v. Podar Bros.,* 636 F.2d 75, 77 (4th Cir.1981) (issue of arbitration was raised in first

---

**5.** The jurisdiction of this Court is therefore based upon 9 U.S.C. § 203 and 28 U.S.C. § 1331. In any event, there is also complete diversity of citizenship here creating an independent basis for jurisdiction.

**6.** Although this action involves intêrnational commerce under the Convention, 9 U.S.C. § 201 *et seq.,* the provisions of section 3 regarding a stay of proceedings are still applicable because

the subcontract is one of the kinds specified in section 1. *See Scherk v. Alberto-Culver Co.,* 417 U.S. at 511 n. 5, 94 S.Ct. at 2453 n. 5.

**7.** Dongsan's motion predated even an answer to the complaint herein. Since the motion is being granted no answer will be necessary until the arbitration is concluded.

pleading in court, held not waived). Dongsan must, however, move toward arbitration or the Court will find its conduct tantamount to a waiver.

Accordingly, Dongsan's motion to stay these proceedings is granted. Dongsan shall file proof that it has commenced arbitration proceedings pursuant to Article XVI of the Subcontract with this Court within thirty days of the date of this Order and RBSD is directed to proceed to such arbitration. If Dongsan does not institute arbitration proceedings within thirty days, this action will resume and Dongsan shall answer the complaint by January 10, 1985, or be deemed in default.

*RBSD's Motion for a Preliminary Injunction*

■ The fact that this dispute is to be arbitrated does not deprive the Court of its authority to provide provisional remedies. *See Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.,* 749 F.2d 124 (2d Cir.1984); *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 716, 719–20 (E.D.N.Y.), *aff'd,* 468 F.2d 1064, 1067 (2d Cir.1972); *see also Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Court must, therefore, decide if this is "a proper case" for an injunction. *Erving,* 468 F.2d at 1067.

The standards governing the issuance of a preliminary injunction are well established in this Circuit. A preliminary injunction will issue only upon

a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance

of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979); *see also, e.g., Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 758 (2d Cir.1979). I find that the second prong test has been met in the present case.

■ The relief sought in this case is minimal. RBSD seeks only to preserve the status quo with respect to the Letter of Guarantee. "The status quo has been frequently defined as the last uncontested status which preceded the pending controversy." *Flood v. Kuhn,* 309 F.Supp. 793, 798 (S.D.N.Y.1970), *aff'd,* 443 F.2d 264 (2d Cir. 1971), *aff'd,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972), *quoted in Erving,* 349 F.Supp. at 719. The last uncontested status in this case found Dongsan holding a Letter of Guarantee for $155,766 with RBSD holding that sum to indemnify Bank Al-Jazira for the letter should it be called. Dongsan's argument that the status quo would be preserved by allowing it to call the letter and take the $155,766 secured thereby is unavailing.[8] RBSD seeks only to prevent Dongsan from calling this letter.[9]

The contract dispute involves nearly one million dollars. Dongsan is a Korean corporation with apparently no fixed assets in the United States. Dongsan does maintain an office in New Jersey and a large amount of liquid assets in bank accounts in New York and New Jersey. Those assets, however, because they are all liquid, could easily be depleted or removed from the United States. If that were to occur, RBSD's ability to recover in this Court on

**8.** Dongsan also argues that the status quo will be upset if it "is unable to *maintain* its security in the form of the Letter of Guarantee" (emphasis added), presumably because the Letter might expire by its own terms and Dongsan would be left with nothing. RBSD has, however, agreed to secure an extension of the Letter for the duration of the arbitration. RBSD is directed to do so and to file proof of such extension with the Court by December 15, 1984. Thus, the status quo will be *maintained.*

**9.** The underlying dispute involves nearly one million dollars, RBSD has not attempted to restrain Dongsan from doing anything with assets valued near that amount to secure any potential judgment. Rather it has merely sought to avoid *increasing* the amounts potentially unrecoverable from Dongsan.

any arbitration award obtained in Paris would be frustrated.

With respect to the Letter of Guarantee, the potential for frustration of RBSD's recovery is doubled. The monies securing the letter are currently in RBSD's possession. If Dongsan is permitted to call the letter, those assets would be transferred, essentially, from RBSD to Dongsan. Any arbitral determination that RBSD is entitled to recover from Dongsan, or that Dongsan was not entitled to call the letter, would be meaningless if Dongsan were to transfer its liquid assets, increased by the monies securing the letter, out of the reach of this Court. Since there would then be no adequate remedy at law for RBSD in this Court, the Court finds that there could be irreparable harm to RBSD if Dongsan is not enjoined from calling the letter.

Dongsan's argument that RBSD would be able to enforce any arbitration award in Korea does not change this finding. RBSD would still have no adequate remedy at law here, in this Court. *See Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209, 217, 58 S.Ct. 834, 838, 82 L.Ed. 1294 (1938); *Di Giovanni v. Camden Fire Ins. Ass'n*, 296 U.S. 64, 69, 56 S.Ct. 1, 3, 80 L.Ed. 47 (1935); *United States v. State of New York*, 708 F.2d 92, 93 (2d Cir.1983). In those cases, the federal courts held that legal remedies in *state* courts did not suffice to make injunctive relief in *federal* courts unavailable. The absence of legal remedy is to be determined in this Court. If the availability of legal remedies in state court is not sufficient to preclude injunctive relief here, *a fortiori* the availability of a legal remedy in a foreign country is not sufficient.[10]

The parties are in hot dispute about the underlying contractual claims. Plaintiff claims it is due nearly $1,000,000. Defendant asserts that plaintiff's obligation to in-demnify could total $10,000,000. Certainly this is sufficient to establish serious questions going to the merits for the arbitrator's decision.

Finally, the Court finds that the balance of hardships tips decidedly toward RBSD. If the status quo is maintained, defendant feels no hardship whatsoever. Dongsan maintains security in the sum of $155,766 should the arbitrators determine that it is entitled to any or all of that sum (or more), and loses nothing that it currently has. If the status quo is not maintained, and Dongsan is permitted to call the letter, RBSD stands to lose its own money (the $155,766) without recourse here.

Accordingly, RBSD's motion is granted. RBSD is to file proof of extension of the Letter of Guarantee for one year (to be extended further if necessary) by December 15, 1984. Dongsan, and any of its officers, directors, controlling persons, parents, affiliates, and/or subsidiaries, is hereby enjoined from directing the Bank Al-Jazira to honor or pay the Letter of Guarantee involved herein.

In sum, as set out more fully above, RBSD's motion for a preliminary injunction is GRANTED; and Dongsan's motion to stay these proceedings pending arbitration of the underlying dispute is GRANTED.

SO ORDERED.

---

**10.** The Court notes that there is some question about the availability of prejudgment attachment under the Convention. *Compare Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044 (N.D.Cal.1977) (yes) *with Metropolitan World Tanker Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional*, 427 F.Supp. 2 (S.D.N.Y. 1975) (no). However, the relief sought here is not an attachment. Dongsan is in no way restricted in its use or possession of its assets, but only in its power to *gather* more assets *from RBSD* leaving RBSD with only the recourse of recovery in Korea.