CONSTRUCTION EXPORTING ENTER-
PRISES, UNECA, Plaintiff,

v.

NIKKI MARITIME LTD., Heritage Ship
Agency, Inc. and Gulf Range Ship
Agency, Inc., Defendants.

No. 82 Civ. 7738–CLB.

United States District Court,
S.D. New York.

March 24, 1983.

---

Caspar F. Ewig, of Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, for plaintiff.

Burlingham, Underwood & Long by Joseph Smith, John S. Martin Jr., U.S. Atty., S.D.N.Y., New York City, for defendants.

## MEMORANDUM DECISION

BRIEANT, District Judge.

This is an action originally filed November 22, 1982, within the general maritime subject matter jurisdiction of this Court. Familiarity is assumed with all prior proceedings. Plaintiff, a corporation existing under the laws of the Republic of Cuba, having its principal office at Havana, Cuba and not present here, was the charterer and apparently also the owner of the Bills of Lading for 5,000 tons of cement and other break bulk cargo carried aboard the M/V RAGNAR of Panamanian registry, owned by defendant Nikki Maritime Ltd., a Liberian corporation not licensed to do business in New York.

On September 17, 1982, the M/V RAGNAR, while in transit in the North Atlantic between Mariel, Cuba and Tobruk, Libya, sent out a radio distress signal, stating that her engine room was flooding as a result of a broken valve, and that she was sinking. On September 18, 1982 the vessel sank with a loss of the entire cargo, valued by plaintiff in excess of 1.3 Million Dollars. The entire crew was rescued and brought to the United States. The records of the vessel are said to be available in this district, and the two most significant witnesses, the Master and Chief Engineer, reside in the United States.

Defendant Nikki Maritime Ltd., being a single vessel corporation, is now proceeding to collect its hull insurance and any other awards from pending litigation or arbitration, pay its mortgages and proceed to wind up its affairs.

Plaintiff seeks damages for its loss of the cargo. The charterparty, although not incorporated by reference in the Bills of Lading, requires arbitration in London, and plaintiff has initiated such proceedings through a British Solicitor. In its original complaint, plaintiff sought an attachment of the hull insurance proceeds, then temporarily present in this district, to assure enforcement of the arbitration award.

This Court, by an oral decision rendered on November 24, 1982, denied plaintiff's motion for an order of attachment, then sought to be issued pursuant to New York CPLR § 6201 as incorporated by Rule 64, F.R.Civ.P. It did so because on the facts then presented, this Court believed itself bound by the very recent decision of the New York Court of Appeals in *Cooper v. Ateliers de la Motobecane, S.A.,* 57 N.Y.2d 408, 456 N.Y.S.2d 728, 442 N.E.2d 1239, decided November 18, 1982. However, this Court granted a temporary restraining order to permit review by the Court of Appeals of the Second Circuit.

The Court of Appeals remanded, holding as follows in its unpublished informal opinion filed January 31, 1983, Dkt. No. 82–7823:

"During oral argument, it was brought to our attention that, on facts now known to appellant's counsel, a 'traditional' admiralty attachment may have been available pursuant to 9 U.S.C. § 8 and Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P. (Supp). In response to our

request for supplemental briefing, appellant set forth facts and arguments under which it claims that such a 'traditional' admiralty attachment could have been obtained. Appellee, in its supplemental brief, disagrees.

Under the circumstances, we believe the best course is to remand the case to the district court to consider whether appellant is entitled to a 'traditional' admiralty attachment. We realize that there are apparently disputes between the parties concerning certain crucial facts relating to the availability of such an attachment here as well as concerning the effect of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., on a 'traditional' admiralty attachment. But those disputes can be resolved in the district court in the first instance."

Although its decision provided that the mandate issue "forthwith," the mandate of the Court of Appeals was not actually received in the district court until February 14, 1983. However, acting on the erroneous assumption that the mandate had issued, this Court, as a result of hearings held February 3 and 4, 1983, granted a continuation of the temporary restraining order, secured by a bond of $50,000, and approved the release therefrom of money concededly owed to the first mortgagee of the vessel. This was done pending submission of a motion for a maritime attachment as authorized by the Second Circuit Court of Appeals opinion quoted above. Such a motion was fully briefed and submitted effective February 16, 1983, and is presently before this Court for decision.

In its original complaint and its initial presentation to this Court, plaintiff alleged that the vessel M/V RAGNAR and defendant Nikki Maritime Ltd. were managed from this district by the co-defendant shipping agents, and controlled by a principal who resides in the United States and who is active generally in international shipping through Liberian and Panamanian vessels and corporations. It now appears that on May 18, 1982 the defendant Gulf Range

Ship Agency, Inc., which originally managed the RAGNAR from New York City for this individual, transferred the management of the vessel to Cosmos Shipping and Trading, a Greek entity, located in Piraeus, Greece. This date is significant, because it is the same date upon which the vessel was time chartered to plaintiff, a Cuban corporation. If Nikki or its vessel, or its principal shareholder were subject to the jurisdiction of the United States, as they probably all were on the day before the transfer of the management of this single vessel corporation to Piraeus, Nikki would have been obliged to obtain a license from the United States Department of the Treasury, Office of Foreign Assets Control, in order to do business with a Cuban entity. See generally, 31 C.F.R. § 515.201 and 515.204(a)(1) and (2). Such licenses are not freely granted, and there is no reason to believe one would have been issued here. Arguably, even after the transfer to Piraeus, Nikki Maritime Ltd. and the vessel M/V RAGNAR remained subject to the jurisdiction of the United States because owned or controlled by a person residing in the United States. See 31 C.F.R. § 515.329.

■ Whether Nikki Maritime Ltd. effectively absented itself from American jurisdiction as a result of this transfer of its affairs to Piraeus need not presently concern us. A litigant cannot blow hot and cold in a lawsuit. Having taken the position that the vessel was being managed from Greece, for the apparent purpose of avoiding the legal consequences of being a corporation subject to the jurisdiction of the United States and accordingly unable to enter into a Cuban time charter, this Court does not believe that Nikki may be heard to oppose with success plaintiff's application for a maritime attachment under Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, which application relies on the premise that Nikki is not "found within the district." Nikki itself says it is not, by its actions in entering into the charterparty. Although plaintiff believed, when it filed its initial complaint and first sought a state law attachment,

that Nikki was actually present in New York, the Court believes that it may treat Nikki as being not present or found within the district at all times after May 18th, when it transferred its presence to Piraeus, Greece for the obvious purpose of facilitating a profitable transaction which could not be performed lawfully from New York.

Accordingly, the issuance of a traditional maritime attachment pursuant to Rule B(1) of the Supplemental Rules appears appropriate. The right to the attachment is not defeated by the filing of a general appearance. But for the security of an attachment, because there is no real presence here, the appearance will be of no assistance to plaintiff in enforcing its rights, and is not equivalent to being found within the district. Presence in the district at times prior to May 18, 1982 will not defeat the right to an attachment to be determined here as of November 22, 1982 when the original complaint was filed, to which date the amended complaint relates back. See generally, 7A Moore's Federal Practice ¶ B.06 n. 28 (2d ed.) and B.08 at p. B–351 n. 2.

Defendant Nikki also contends that issuance of a Rule B(1) attachment would be inconsistent with the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") reproduced following 9 U.S.C. § 201. This is an issue upon which reasonable minds could differ. A number of cases can be found on either side. The issue troubled the sharply divided New York Court of Appeals in *Cooper, supra.* Implicit in the majority opinion in that case is an exception for maritime cases (p. 731 of 456 N.Y.S.2d p. 1242 of 442 N.E.2d) and the view of the dissenters seems most persuasive. Judge Meyer wrote (p. 732 p. 1243 of 442 N.E.2d):

"(2) [I]n light of ... the fact that the UN Convention does not specifically address the subject of preaward attachment, the UN Convention cannot properly be said to have proscribed such an attachment by implication; and (3) the use of attachment in maritime contract cases arbitrated under the Federal statute cannot properly be distinguished from arbitration-related attachment permitted under State statutory and decisional law, for the UN Convention makes no distinction; it either permits or proscribes both. In my view, absent more specific language of proscription in the UN Convention, it permits both."

See also *Andros Cia. Maritima S.A. v. Andre & Cie.,* 430 F.Supp. 88, 93 (S.D.N.Y. 1977). We should not favor constructions which impair our jurisdiction by implication.

Plaintiff's motion is granted.

In light of the Suggestion of Interest of the United States docketed March 7, 1983, the Court assumes that the motion to dismiss in favor of a foreign forum on grounds of *forum non conveniens* is now moot. If counsel for defendant Nikki do not agree, the motion may be renoticed for a hearing in light of the circumstances presently existing.

Settle an order and a writ of attachment on five (5) days notice.