INTERNATIONAL SHIPPING COMPANY, S.A., Lygren Maritime Services, S.A., Plaintiffs,

v.

HYDRA OFFSHORE, INC., T. Peter Pappas, James Pappas, American General Resources, Inc., Richard Jaross, Astron Management Corporation and Maryland Navigation Co., Inc., Defendants.

No. 87 CIV. 3988 (PKL).

United States District Court, S.D. New York.

Dec. 16, 1987.

---

A. Richard Golub, New York City, Gary Graifman, of counsel, for plaintiffs.

Cardillo & Corbett, New York City, Robert V. Corbett, Christophil B. Costas, Tulio Prieto, Peter G. Drakos, of counsel, for defendants T. Peter Pappas, Astron Management Corp. and Maryland Navigation Co., Inc.

## OPINION & ORDER

LEISURE, District Judge:

On June 9, 1987, plaintiffs International Shipping Company, S.A. ("International") and Lygren Maritime Services, S.A. ("Ly-

gren") commenced the instant action by filing a complaint alleging that defendant Hydra Offshore, Inc. ("Hydra") breached a contract for the sale of the vessel BRAZILIAN FRIENDSHIP ("the FRIENDSHIP") to plaintiff International. Lygren was the broker that arranged the sale. Plaintiffs also allege that the other defendants intentionally and tortiously interfered with existing contractual relations in connection with the sale of the FRIENDSHIP by Hydra to International. Plaintiffs applied for a preliminary injunction by way of Order to Show Cause dated June 11, 1987, seeking to enjoin defendants from using, moving or disposing of the FRIENDSHIP. After hearing arguments on June 30, 1987, the Court denied the application for injunctive relief and dismissed plaintiffs' complaint because the Court lacked subject matter jurisdiction of the action.

The case is now before the Court on the motion of defendants T. Peter Pappas, Astron Management Corporation ("Astron") and Maryland Navigation Co., Inc. ("MNC") for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motion is granted.

### FACTUAL BACKGROUND

Plaintiffs' complaint alleged that on or about May 15, 1987, plaintiffs agreed with defendant Hydra that Hydra would sell the FRIENDSHIP to International for $2,650,-000, with ten percent of the purchase price to be paid within three banking days of the signing of the agreement. Complaint ¶ 14. On May 25, 1987, the agreement was formalized. *Id.* at ¶ 16. On May 27, 1987, International deposited ten percent of the purchase price with the Royal Bank of Scotland on behalf of Hydra. *Id.* at 18. On May 28, 1987, Hydra sought to return the downpayment and repudiate the contract. *Id.* at ¶ 19.

The complaint goes on to allege that some time after May 25, 1987, Hydra agreed to sell and did sell the FRIENDSHIP to defendants Richard Jarros, American General Resources, Inc., James Pappas, T. Peter Pappas, Astron and MNC. *Id.* at ¶ 26. Plaintiffs sought specific performance of the contract, $12,500,000 in compensatory damages and $20,000,000 in exemplary damages.

International commenced an arbitration in the United Kingdom entitled *In the Matter of Arbitration Between International Shipping Company, S.A. and Hydra Offshore Inc.* On June 1, 1987, International obtained an order from the High Court of Justice, Queens Bench Division, Commercial Court, restraining Hydra from transferring possession of the FRIENDSHIP.[1]

On June 11, 1987, plaintiffs applied for injunctive relief by way of Order to Show Cause. The Court signed the Order to Show Cause, but deleted a paragraph that temporarily restrained defendants from selling or transferring the vessel (hereinafter "temporary restraining order"). The Court directed that service be made on or before June 12, 1987. On Friday, June 12, 1987, Cardillo & Corbett, counsel for defendants T. Peter Pappas, Astron and MNC, received a letter from A. Richard Golub, Esq., counsel for plaintiffs that stated:

> Pursuant to our conversations of June 10th and 11th, I am serving you with a copy of the Order To Show Cause signed by Judge Leisure in the above pending action.

Affidavit of Tulio R. Prieto, Esq., sworn to on July 15, 1987, in Support of Defendants' Motion for Imposition of Sanctions, Exhibit A (hereinafter "Prieto Aff."). The enclosed copy of the Order to Show Cause, however, was not a conformed copy, and did not reflect, or otherwise indicate, that I had deleted the paragraph containing the

---

**1.** The order provides:

The Defendants, whether by themselves their servants or agents or otherwise howsoever be restrained until the hearing of the originating Summons herein or further order from selling, chartering, disposing of or charging the Vessel "BRAZILIAN FRIENDSHIP" or deliver-

ing up possession or control of the same or otherwise dealing with the said vessel in any manner which is inconsistent with the rights of plaintiffs under the Sale Agreement, relating to the said Vessel signed on behalf of the Plaintiffs and Defendants on 25th May, 1987.

temporary restraining order. *Id.* Defendants' counsel therefore labored through the weekend under the impression that said temporary restraining order was in effect. Prieto Aff. at ¶ 7.

At the hearing on Tuesday, June 16, 1987, defendants appeared in compliance with the order to show cause why a preliminary injunction should not be issued. Plaintiffs then urged the Court to hold an evidentiary hearing. Transcript of June 16, 1987 hearing at 5–6, 9, 12.[2] Defendants urged the Court to hear argument, rather than hold an evidentiary hearing, on whether a preliminary injunction should be issued because defendants could "convince the court as a matter of law and without any question of fact that there should not be a preliminary injunction or that there shouldn't even be an application for a permanent injunction." Transcript of June 16 hearing at 10. The Court then set June 25, 1987, as the date for hearing arguments from counsel. The June 25 date was rescheduled for June 30, 1987. At the June 30 proceeding, the Court heard arguments on whether it had subject matter jurisdiction over the action and concluded that it did not. The Court therefore dismissed the complaint.

## LEGAL DISCUSSION

█ As previously stated, defendants have moved for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11, as amended in 1983 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.

\* \* \* \* \* \*

> If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (as amended, 1983). Rule 11 was amended in 1983 to provide a more expansive standard for the imposition of sanctions. As Judge Kaufman, joined by Judges Oakes and Meskill, noted in the seminal case on amended Rule 11,

> [n]o longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. For the language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.

*Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985) (*"Eastway I"*). The Court went on to note that

> sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Id.* at 254 (emphasis in original). The Court made clear that when Rule 11 has been violated, a district court must impose appropriate sanctions. *Id.* at 254 n. 7.

---

**2.** References to the transcripts of the proceedings of this matter on June 16 and June 30, 1987, are specifically referred to hereinafter as to said dates.

Later cases have given further guidance to district courts in considering when the imposition of sanctions is proper. In *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986), *cert. denied sub nom. County of Suffolk v. Graseck*, —— U.S. ——, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), Judge Pratt, joined by Judges Newman and Pierce, ruled that the district court "is to avoid hindsight and resolve all doubts in favor of the signer. As we stated in *Eastway*, rule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'" *Oliveri*, 803 F.2d at 1275 (quoting *Eastway*, 762 F.2d at 254). Similarly, in *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir.1986), Judge Lumbard, joined by Judges Kearse and Winter, found that sanctions must be imposed under Rule 11 if there was "no chance of success under existing precedents, and no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *Id.* at 1288.[3]

The Court will therefore impose sanctions only if it is patently clear that the complaint was filed without reasonable inquiry into whether it was warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. In the instant case, the complaint alleged:

The Court's jurisdiction and the claims of the plaintiff are based, *inter alia*, upon 28 U.S.C. Section 1333, and upon 28 U.S.C. Section 1332 as a result of diversity of citizenship and the amount in controversy being in excess of 10,000.00 and upon Title IX of the U.S.C. Section 14, entitled, "Convention On Recognition And Enforcement Of Foreign Arbitral Awards" ("Arbitration Treaty").

Complaint ¶ 1. The Court now considers each basis of jurisdiction asserted by plaintiffs in turn to determine whether it is patently clear that the Court lacked subject matter jurisdiction over the action.

1. *Admiralty Jurisdiction 28 U.S.C. Section 1333*

■ Section 1333 of Title 28 of the United States Code provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

28 U.S.C. § 1333. The gravamen of the complaint is breach of a contract for the sale of a vessel, and tortious interference with that contract. It is elementary hornbook law that a contract for the sale of a vessel is not within the admiralty jurisdiction of the district courts. G. Gilmore & C. Black, *The Law of Admiralty* § 1–10 at 26 (2d ed. 1975); 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky *Benedict on Admiralty* § 187 at 11–32 (6th ed. 1985). Numerous courts have also stated the proposition that a contract for the sale of a vessel is not within admiralty jurisdiction. *See, e.g., CTI Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380 n. 4 (2d Cir.1982); *The Ada*, 250 F. 194, 197–98 (2d Cir.1918) (Rogers, J., concurring); *Economu v. Bates*, 222 F.Supp. 988, 991 (S.D.N.Y.1963); *Twin City Barge & Towing Co. v. Aiple*, 709 F.2d 507, 508 (8th Cir.1983).

In the instant case, plaintiffs alleged nothing in the complaint that would remove this case from the scope of the general principle that cases involving contracts for the sale of a vessel are not admiralty cases. Nor did plaintiffs address the issue in their papers filed on June 29, 1987, in support of their application for injunctive relief. Plaintiffs' counsel was asked repeatedly[4] at the June 30 proceeding to identify the basis of the Court's admiralty jurisdiction, but his answers did not address the issue

---

**3.** The Supreme Court has recently noted that Rule 11 should be used to protect defendants from suits premised on baseless allegations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

*Foundation, Inc.*, —— U.S. ——, ——, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987).

**4.** See transcript of June 30 proceeding at pages 3, 4, 5, 6 and 7.

at all. Plaintiffs' counsel relied on three case sources. The first, *Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044 (N.D.Cal.1977), not only fails to address the issue of whether there is admiralty jurisdiction over a contract for sale of a vessel, but does not even mention admiralty jurisdiction. Plaintiffs' counsel also relied on *Paramount Carriers Corp. v. Cook Industries*, 465 F.Supp. 599 (S.D.N.Y.1979), and *Construction Exporting Enterprises, UNECA v. Nikki Maritime Ltd.*, 558 F.Supp. 1372 (S.D.N.Y.1983). Although both these cases deal with admiralty jurisdiction, neither mentions contracts for the sale of a vessel.

The arguments advanced by counsel at the June 30 proceeding amply demonstrate that no inquiry at all, not to mention a reasonable inquiry, was made on the point of whether admiralty jurisdiction was proper.

 Now, after the dismissal of the complaint, when faced with the possibility of the imposition of sanctions, plaintiffs' counsel argues that

> [a]lthough defendants cavalierly dismissed the notion of any maritime basis of jurisdiction, the contract of sale included a contract of affreightment with respect to the iron ore aboard the Friendship. The argument cannot be dismissed that the entire relationship between plaintiffs and Hydra might not fall "within the pale of admiralty jurisdiction."

Plaintiffs' Memo at 26–27 (quoting *Paramount Carriers, supra*, 465 F.Supp. at 601). Passing over the fact that the instant motion does not concern defendant Hydra, plaintiffs have not raised this objection until now. But the burden is on the plaintiff to show that the Court has subject matter jurisidiction over an action.[5] Moreover, even if the contract for affreightment would bring that part of the action within the admiralty jurisdiction of the Court, the remainder of the action would not necessarily be subject to admiralty jurisdiction. As a noted treatise on the subject has stated, "[a] contract, not maritime in itself, which is collateral to a maritime contract does not by reason of its relation to such contract acquire a maritime character and is not ordinarily cognizable in admiralty." *1 Benedict on Admiralty, supra*, § 184 at 11–9.

The papers submitted to the Court and the arguments of plaintiffs' counsel at the June 30 proceeding made no arguments for extension, modification or reversal of existing law. Plaintiffs' counsel had clearly not made any inquiry into the admiralty basis of jurisdiction. It is therefore patently clear that the Court lacks admiralty jurisdiction over this action.

2. *Diversity Jurisdiction 28 U.S.C. Section 1332*

 Section 1332 of Title 28 of the United States Code provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
>
> (1) Citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
>
> \* \* \* \* \* \*
>
> (c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .

---

**5.** *See* 13 C. Wright, A. Miller & E. Cooper *Federal Practice and Procedure* § 3522 (2d ed. 1984):

> The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists. Thus the facts showing the existence of jurisdiction must be affirmatively alleged in the complaint. If these facts are challenged, the burden is on the party claiming jurisdiction to demonstrate that the court has jurisdiction over the subject matter. *Id.* at pp. 62–65 (footnotes omitted).

28 U.S.C. § 1332. The law in this Circuit is clear that "the presence of aliens on two sides of a case destroys diversity jurisdiction." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2d Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981) (citing *IIT v. Vencap Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975)).

Plaintiffs in the instant case concede that they are both foreign corporations. Complaint ¶¶ 3, 4. Plaintiffs allege that defendants Hydra and MNC are foreign corporations. Complaint ¶¶ 5, 10. There are therefore aliens on both sides of the case, and diversity jurisdiction is defeated.

At the June 30 proceeding, plaintiffs' counsel argued that Hydra could be dropped from the action because it was a nominal defendant.[6] Transcript of June 30 proceeding at 10. But this does not address the issue of diversity jurisdiction over MNC, which is also a foreign corporation.

At the June 30 proceeding plaintiffs' counsel asserted that "[w]hether or not you have aliens on both sides, it's irrelevant once their principal places of business are here in New York." Transcript of June 30 proceeding at 8–9. The complaint did indeed allege that MNC's principal place of business was New York. The Court in *Venezolana* addressed this issue, and concluded that *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir.1976), had left open the question whether alien corporations are citizens of the state in which they have their principal place of business. *Venezolana*, 629 F.2d at 790. But the Court decided in *Venezolana* that the issue was irrelevant, for even if such dual citizenship exists, "the fact that alien parties were present on *both* sides would destroy complete diversity." *Id.* (emphasis in original) (citing *Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976)). Thus, accepting plaintiffs' allegation that MNC is doing business in New York, MNC is nevertheless an alien for diversity purposes, and

diversity jurisdiction is therefore destroyed.

■ A cursory review of a hornbook or digest would have revealed this jurisdictional defect to plaintiffs' counsel. As the District Court for the District of Columbia observed on this point in a closely analogous case,

[m]ovants had knowledge of the foreign citizenship of plaintiff and two of the defendants, and most certainly should have known of the complete diversity rule. If they had any doubts whatsoever as to the applicability of that rule in a suit involving foreign nationals, those doubts could have been put to rest by consulting the most basic of reference works. Moore's Federal Practice, for example, states quite succinctly that "[w]hen there are alien parties on both sides of the controversy jurisdiction will be found lacking even though they are citizens of different foreign countries," 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.75 (2d ed. 1986); West's Federal Digest devotes an entire keynote to the subject of "Controversies between a state or citizen thereof and foreign states, citizens or subjects," and lists no less than seventeen cases in which courts have either held or noted that diversity is lacking when foreign nationals are on both sides of a suit, 47 West's Federal Practice Digest 3d 543–50 (1985); and Wright, Miller and Cooper note that since the Supreme Court's 1829 decision in *Jackson v. Twentyman*, 27 U.S. (2 Pet.) 136, 7 L.Ed. 374 (1829), "the federal courts consistently have denied jurisdiction over suits between aliens." 13B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3604 (2d ed. 1984). Contrary to movants' contention, the diversity rule regarding foreign nationals is neither little-known nor obscure, and more importantly, even the most cursory research could not have failed to disclose it.

---

6. Counsel for defendants do not concede that Hydra can be dropped from the action. Transcript of June 30 proceeding at 26–27.

*Rowland v. Fayed,* 115 F.R.D. 605 (D.D.C. 1987) (footnote omitted). Plaintiffs' counsel in the instant case should also have consulted those basic research tools. Once again, it is evident that plaintiffs' counsel did not conduct any inquiry into the applicable law, not to mention a reasonable inquiry.[7]

3. *Convention on the Recognition and Enforcement of Foreign Arbitral Awards 9 U.S.C. Sections 201–208*

▉ Section 203 of Title 9 of the United States Code provides:

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. Section 202 specifies what actions fall under the Convention:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

9 U.S.C. § 202.

At the June 30 proceeding, the Court found that actions covered by the Convention are those in which the party invoking the Convention seeks either the recognition of an agreement in an action to compel arbitration or the enforcement of an arbitral award. Transcript of June 30 proceeding at 39. Because this case involved neither an action to compel arbitration nor enforcement of an arbitral award, the Court found that it did not have subject matter jurisdiction pursuant to the Convention. *Id.* at 39–41.[8]

Even if there were an arbitral award or motion to compel arbitration, however, the Convention could confer subject matter jurisdiction on this Court only as to defendant Hydra. Only Hydra had an agreement to arbitrate with plaintiffs. The remaining defendants had no agreement at all with plaintiffs, and certainly no agreement to arbitrate. It is axiomatic that "a party cannot be required to submit to arbitration any disputes which he has not agreed to submit." *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78, 81 (2d Cir.1983). It is therefore clear beyond cavil that the

7. Plaintiffs' counsel also alleged at the June 30 proceeding that MNC was a bogus or sham corporation formed solely for the purpose of taking title to the ship. Transcript of June 30 proceeding at 13. But as defendants observe in their Reply Memorandum of Law in Support of Defendants' Motion for Rule 11 Sanctions (hereinafter "Defendants' Reply Memo"), the cases cited by plaintiffs in support of piercing the corporate veil are largely irrelevant. *See* Defendants' Reply Memo at 9–18. *See Amarillo Oil Co. v. Mapco, Inc.,* 99 F.R.D. 602, 604 (N.D. Tex.1983) ("the creation of diversity jurisdiction is one of the least compelling reasons for disregarding corporate entity.").

It should also be noted that if there is to be jurisdiction under 9 U.S.C. section 203, *see infra* at 153, Hydra would be a necessary party. If Hydra were not dropped from the action, even if the Court pierced the corporate veil of MNC, diversity jurisdiction would be lacking because of the presence of aliens on both sides of the case. *See Venezolana, supra,* 629 F.2d at 790.

8. Plaintiffs' counsel argues that there is a "solid line of cases holding that jurisdiction is validly based upon the arbitration statute or Convention to issue pre-arbitration equitable relief." Plaintiffs' memo at 12. But no case cited by

plaintiffs' counsel addressed the issue whether a court could issue an injunction based solely on the Convention. *Carolina Power & Light v. Uranex,* 451 F.Supp. 1044 (N.D.Cal.1977), and *Rogers, Burgun, Shahine & DeSchler, Inc. v. Dongsan Construction Co., Ltd.,* 598 F.Supp. 754 (S.D.N.Y.1984), both dealt with attachment rather than injunctive relief. *Paramount Carriers Corp. v. Cook Industries, Inc.,* 465 F.Supp. 599 (S.D.N.Y.1979), *Construction Exporting Enterprises, UNECA v. Nikki Maritime, Ltd.,* 558 F.Supp. 1372 (S.D.N.Y.1983), and *Andros Compania Maritima, S.A. v. Andre & Cie., S.A.,* 430 F.Supp. 88 (S.D.N.Y.1977), concerned admiralty jurisdiction, note the Convention alone. Finally, *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 716 (E.D.N.Y.), *aff'd,* 468 F.2d 1064 (2d Cir.1972), does not even mention the Convention.

The Court found *Pilkington Brothers P.L.C. v. AFG Industries, Inc.,* 581 F.Supp. 1039 (D.Del. 1984), most apposite. Thus, although the Court did not ultimately find the line of cases cited by plaintiffs' counsel persuasive, it cannot be said that it was not a good faith argument for the extension of existing law.

Court lacks jurisdiction pursuant to the Convention over all defendants except possibly Hydra.[9]

As the Second Circuit has frequently noted, a great concern with imposition of sanctions pursuant to Rule 11 is that it may chill the exercise of legal creativity and stifle enthusiasm for zealous advocacy. *See, e.g., Eastway,* 762 F.2d at 254. A second problem, perhaps not as readily apparent to the appellate courts, is that imposition of sanctions in one case may encourage parties to bring motions for sanctions under Rule 11 in other cases. This is not a salutary development, for the limited time of the district courts is then consumed with Rule 11 motions that are often frivolous and baseless themselves.[10] This Court therefore imposes sanctions with great reluctance.

This is, however, an egregious example of the violation of the spirit and letter of Rule 11, as amended. While seeking the drastic and extraordinary relief of a preliminary injunction brought on by way of Order to Show Cause, plaintiffs' counsel had clearly not examined the very basis for his presence in this Court. A cursory review of hornbook law and the facts of this case would have indicated that there was no basis for this Court to exercise subject matter jurisdiction.

▇▇▇▇ Plaintiffs' counsel complains that he received defendants' papers raising the jurisdictional objections only the day before the June 30 proceedings.[11] Yet the obligation imposed by Rule 11 to conduct a reasonable inquiry into the facts and law underlying a pleading, motion or other paper is not triggered only when such paper is challenged. Rather, the attorney's signature "constitutes a certificate that he has read the pleading, motion or other paper;

that to the best of the signer's knowledge, information and belief, *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law...." Fed.R.Civ.P. 11 (emphasis added). Plaintiffs' counsel therefore cannot be heard to complain now that his adversary did not raise these issues earlier, for Rule 11 imposed upon him the duty to explore these questions before signing and filing the complaint. Because Rule 11 has been violated, the Court must impose appropriate sanctions. *Eastway, supra,* 762 F.2d at 254 n. 7; *Norris v. Grosvenor Marketing Ltd., supra,* 803 F.2d at 1288.

▇▇▇▇ The Court of Appeals for the Second Circuit has recently held that a district court need not award a defendant entitled to fees pursuant to Rule 11 the full amount of the fees based on the hours reasonably expended by counsel. *Eastway Construction Corp. v. City of New York,* 821 F.2d 121, 122–23 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (*"Eastway II"*). The Court found that while "district judges have discretion in determining the amount of a defendant's fee that would be reasonable to serve as a sanction," such discretion must "be exercised within reasonable limits." *Id.* at 123.

In this case, defendants' counsel expended $48,031.33 in defending the action. Prieto Aff., Exhibit C. Had plaintiffs' counsel performed an inquiry into the basis of jurisdiction in this Court, this action would not have been brought, and none of those fees would have been incurred in the matter before this Court. But the work of defendants' counsel was not for naught; an action is now pending in state court relating to the same issues. Much of the work done by defendants' counsel on the issue of whether an injunction should issue

---

9. But plaintiffs' counsel indicated that it would drop Hydra from the action because it was just a nominal party. Transcript of June 30 proceeding at 10 ("Hydra Offshore Inc. is a nominal defendant, your Honor. We could just as soon drop them out of the case."), 24 ("We would drop Hydra for the sake of jurisdiction. Hydra was just put in there in the first instance because it was a nominal party.").

10. *See Whittington v. Ohio River Co.,* 115 F.R.D. 201 (E.D.Ky.1987). The court there noted that "the time saved by deterring frivolous litigation tends to be offset in hearings on Rule 11 motions and countermotions." *Id.* at 205.

11. Mr. Golub neglects to mention, however, that the first memorandum of law filed in support of the relief sought was also filed on June 29, 1987, the day before the oral argument.

and on the merits of the case can therefore be used in the state court action. In any event, the purpose of Rule 11 is not only to compensate the aggrieved party for any losses incurred, but to sanction those who have violated Rule 11. *Eastway II,* 821 F.2d at 122–23. The Court will therefore impose an award of attorney's fees that is sufficient "to serve the sanctioning purpose" of Rule 11. *Id.* at 123. After considering the purposes of Rule 11 and the fact that much of the work done by defendants' counsel may be used in the pending state court action, the Court concludes that the amount of the sanction should be $10,000.

Rule 11 allows for the imposition of sanctions against one who signs a pleading, a party, or both. In this case, it is clear that the full award must be imposed against plaintiffs' counsel. Plaintiffs doubtless feel that they have a valid legal claim. They should not be held responsible for their attorney's failure to inquire into jurisdictional matters and bring the action in the appropriate forum.

### CONCLUSION

Defendants' motion for sanctions pursuant to Rule 11 is hereby granted. A. Richard Golub is ordered to pay $10,000 to T. Peter Pappas, Astron Management Corporation and Maryland Navigation Co., Inc. A. Richard Golub is ordered to file a certificate of compliance with the Clerk of the Court within ten days from the date hereof.

Because the complaint has already been dismissed, the filing of the certificate of compliance will close the case.

SO ORDERED.