---

**INTERNATIONAL SHIPPING COMPANY, S.A., and Lygren Maritime Services, S.A., Plaintiffs–Appellants,**

**and**

**A. Richard Golub, as Attorney, Appellant,**

**v.**

**HYDRA OFFSHORE, INC., T. Peter Pappas, James Pappas, American General Resources, Inc., Astron Management Corporation, Richard Jaross, and Maryland Navigation Co., Inc., Defendants–Appellees.**

No. 895, Docket 88–7003.

United States Court of Appeals, Second Circuit.

Argued March 8, 1989.

Decided May 17, 1989.

---

Shipping Company, S.A. ("International"), a Panamanian company, through its agent Lygren Maritime Services, S.A. ("Lygren"); a Swiss corporation, allegedly entered into an agreement with Hydra Offshore, Inc. ("Hydra"), a corporation organized under the laws of Liberia, to buy a vessel called Friendship. After International had paid 10% on the total purchase price of $2,650,-000.00, Hydra sold the ship to Maryland Navigation Co. ("Maryland"), another Liberian corporation with New York as its principal place of business.

On June 1, 1987, upon International's motion, the English High Court of Justice, Queens Bench Division, restrained Hydra from disposing of or moving the ship, pending the outcome of an arbitration in Britain. Shortly thereafter, appellants brought this action in the Southern District of New York. They alleged Hydra breached a contract to sell the Friendship to International and that Maryland, American General Resources, Astron Management Corp. ("Astron"), James and Peter T. Pappas, and Richard Jaross,[1] intentionally and tortiously interfered with its contractual relations with Hydra for the sale of the Friendship. The complaint asserted federal jurisdiction grounded on admiralty (28 U.S.C. § 1333), diversity of citizenship (28 U.S.C. § 1332), and the Convention on Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. §§ 201–208).

On June 11, 1987, because of the British court's order, appellants sought an order for a preliminary injunction to prevent Maryland or Hydra from selling, moving, chartering, or otherwise disposing of the vessel. Judge Leisure denied International's request for a temporary restraining order by deleting language in the draft order which would have prevented appellees from selling or transferring the vessel pending the hearing scheduled for June 16. A copy of the order served on Friday, June

A. Richard Golub, New York City, for plaintiffs-appellants.

Tulio R. Prieto (Cardillo & Corbett, New York City), for defendants-appellees.

Before KAUFMAN, CARDAMONE, and PRATT, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Subject matter jurisdiction is the *sine qua non* of the exercise of power by a federal court. One purpose of Rule 11 of the Federal Rules of Civil Procedure is to prevent an attorney from haling a party into federal court without having performed, at the very least, a reasonable inquiry into the jurisdictional underpinning of the lawsuit.

The facts necessary for our decision are undisputed. In May 1987, International

---

1. American General Resources Inc., is a domestic corporation organized under the laws of Connecticut. Richard Jaross is a resident of Connecticut and is the principal shareholder of American General. Astron is a domestic corporation with its principal place of business in New York. James Pappas, a resident of Massachusetts, is a principal shareholder in Astron and is also interested in Maryland Co. Peter Pappas resides in Connecticut and is a principal shareholder of Astron and is also interested in Maryland.

12, 1987, by appellants' attorney, however, did not reflect the deletion of the paragraph imposing a temporary restraining order, nor did the copy bear Judge Leisure's signature.[2]

The jurisdictional grounds for issuance of the injunction were attacked for various reasons by Maryland Navigation in an affidavit filed with the court June 16, 1987. On June 30, Judge Leisure heard oral argument to determine whether subject matter jurisdiction existed. Finding no basis for jurisdiction, he dismissed the action. Appellees then sought to impose Rule 11 sanctions against all appellants. The court ultimately imposed a $10,000 penalty on appellants' counsel Golub, because "[w]hile seeking the drastic and extraordinary relief of a preliminary injunction ... [he] had clearly not examined the very basis for his presence in [the federal] Court." *International Shipping Co. v. Hydra Offshore, Inc.,* 675 F.Supp. 146, 154 (S.D.N.Y.1987).

The district court granted counsel's motion for reargument of its decision, and some 11 months after the issuance of the original order heard reargument on both the amount and imposition of sanctions. Judge Leisure declined to amend his order, noting that no new arguments or evidence had been presented. Thereafter, counsel Richard Golub reinstated his appeal, which he had withdrawn pending the outcome of reargument.[3]

■ Rule 11[4] mandates sanctions where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable

argument has been advanced to extend, modify or reverse the law as it stands. *Cf. Norris v. Grosvenor Marketing Ltd.,* 803 F.2d 1281, 1288 (2d Cir.1986). The Rule "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985). This requirement assures that lawyers are prepared to demonstrate that they have done the necessary investigation prior to appearing in court. Golub's arguments are examples of *"post hoc sleight of hand"* calculated to make plausible very tenuous jurisdictional claims. *See* Schwarzer, *Rule 11 Revisited,* 101 Harv.L.Rev. 1013, 1022 (1988).

Unfortunately, our dissenting brother misconstrues the reason sanctions were imposed in this case. In so doing he ignores the purpose for the revision of Rule 11. Its principal objective was to "reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." Fed.R.Civ.P. 11 Advisory Committee Note. The Rule compels us to focus on counsel's conduct at the time of the submission in deciding if a reasonable inquiry has been made. *Id.*

■ The district court concluded that Rule 11 was violated because appellant failed to perform a reasonable inquiry into the applicable law prior to signing the complaint. Regardless of the validity of any argument Golub can now conjure to justify overlooking a well-established principle of

---

**2.** The effect of the service of this purported copy of Judge Leisure's Order was to force counsel for appellees to labor over the weekend under the impression that the temporary restraining order was already in force. Whether innocent or otherwise, the service of an unconformed copy of an Order to Show Cause on extremely short notice, which incorrectly asserted the imposition of a temporary restraining order is a cause of concern.

**3.** While International and Lygren also appeal the decision imposing sanctions, we read their participation as based upon the claim that the court erred in dismissing the suit for lack of subject matter jurisdiction. The appeal was

concerned principally with the sanctions imposed on counsel.

**4.** In pertinent part, Fed.R.Civ.P. 11 states: The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

law, he was required to conform with the law or be prepared to challenge it at the time he signed the complaint. Contrary to our dissenting brother's view, we believe that the filing of a complaint in which Golub identified alien corporations on both sides of the litigation revealed that he was unaware of the complete diversity requirement. This fact is plainly revealed by the complaint itself, the colloquy before the court, and Golub's contention that he should not be punished because he did not receive the opposition's papers raising jurisdictional objections until the day before oral argument.

As we stated, appellants' complaint alleged federal jurisdiction founded upon diversity, admiralty, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The admiralty and Foreign Arbitral Awards grounds, however, were both found to be jurisdictionally deficient. Golub does not contest those findings on appeal.[5]

Golub's principal claim on appeal rests upon the premise that jurisdiction existed because Maryland Navigation Company's principal place of business was New York, rendering it solely a citizen of that state for purposes of diversity under § 1332(c).[6] As support for this proposition, Golub cites dicta in *Bergen Shipping Co. v. Japan Marine Services Ltd.*, 386 F.Supp. 430 (S.D.N.Y.1974).

The general rule requiring complete diversity between opposing parties is explicit and unequivocal. As Judge Leisure properly concluded, "[a] cursory review of a hornbook or digest would have revealed

[the] jurisdictional defect to [appellants'] counsel." *International Shipping*, 675 F.Supp. at 152. *See* 1 Moore's Federal Practice ¶ 0.75 (2d ed. 1986); 13B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3604 (2d ed. 1984). Clearly, this rule applies in cases where aliens appear on both sides of a case. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction."), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). *Accord ITT v. Vencap Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975). *See also Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976).

In *Venezolana*, this court dealt with the applicability of 28 U.S.C. § 1332(c) to alien corporations. We decided that even if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity in nonetheless defeated if another alien party is present on the other side of the litigation. *Venezolana*, 629 F.2d at 790. We postulated a situation in which such corporations would have "dual citizenship"—being regarded as citizens of both the State of their principal place of business and the nation under whose law it had been incorporated. *Id.* To the extent that the dicta in *Bergen* suggested that under § 1332(c) a corporation might be considered *solely* a citizen of the State of its principal place of business,

---

**5.** While appellants may have abandoned arguments for the court's subject matter jurisdiction based upon admiralty and the Convention, we can and do take note that these claims were defective at the time the pleadings were signed, a fact that would have been apparent after a reasonable inquiry.

Judge Leisure correctly ruled that admiralty jurisdiction under 28 U.S.C. § 1333, does not exist in actions involving the breach of a contract for the sale of a vessel. *See CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380 n. 4 (2d Cir.1982); *The Ada*, 250 F. 194, 197–98 (2d Cir.1918) (Rogers, *J.*, concurring).

Appellants' contentions that jurisdiction could be premised on the Convention on the Recogni-

tion and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208 were also appropriately rejected. The district court found the Convention inapplicable in this case because the party invoking its provisions did not seek either to compel arbitration or to enforce an arbitral award. *See International Shipping Co. v. Hydra Offshore*, 675 F.Supp. 146, 150–153.

**6.** Appellants agreed at the June 30, 1987 hearing to drop Hydra in order to preserve diversity under § 1332. This, however, still left International and Lygren—both foreign corporations—on one side of the litigation and Maryland, a Liberian corporation on the other.

its force was vitiated by our subsequent decision in *Venezolana*.[7]

In view of these precedents we are forced to conclude that a reasonable inquiry into the current law would have precluded the argument counsel made at the hearing on June 30—that "[w]hether or not you have aliens on both sides [of a litigation is] irrelevant once their principal places of business are here in New York." Nor could he have stated, after opposing counsel's extended discussion of the controlling cases, "I don't know what the reference is to dual citizenship." Under current Second Circuit doctrine it would have been apparent—after a reasonable examination of the law—that Golub had no chance of succeeding based upon *Bergen*.[8]

In addition, we search in vain for any principled argument advanced by counsel to reverse or modify our holding in *Venezolana*. Instead, he insists that what was decided in that case was not, in fact, decided at all. Yet in *Venezolana* we concluded beyond cavil that, in this circuit, a corporation organized under the laws of a foreign nation remains an *alien* corporation under § 1332, even if its principal place of business is in one of the States. 629 F.2d 786, 790. We made this conclusion unmistakable by citing with approval *Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y.1976), a case that criticized and rejected the *Bergen* analysis.

■ Appellants also claim that Judge Leisure erred in failing to hold an evidentiary hearing to determine the amount of sanctions—on the supposition that sanctions were imposed to compensate appellees. This argument fails for at least two reasons. At the outset it should be stated that appellants were permitted to reargue the Rule 11 motion, but failed to present any new evidence to attack the imposition

or amount of sanctions. Moreover, we have previously rejected the notion that the imposition of sanctions pursuant to Rule 11 requires an evidentiary hearing. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986), *cert. denied sub nom.*, *County of Suffolk v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also* Fed. R.Civ.P. 11 Advisory Committee Note ("[T]he court must to the extent possible limit the scope of sanction proceedings to the record.").

In any event, sanctions were imposed by the court below primarily to reprove appellants' attorney rather than to compensate the opposing side for its expenditures in resisting the action. *See International Shipping*, 675 F.Supp. at 154–55. It is well settled that Rule 11 empowers judges with discretion to award that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule. *See, e.g., Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir.1987) ("Eastway II"). The scope of that discretion is broad. *See, e.g., Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1476 (2d Cir.1988), *cert. granted sub nom. Pavelic & Leflore v. Marvel Entertainment Group*, — U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989). And, an appellate court will apply an abuse of discretion standard upon review. *Id.* As we noted in *Eastway II*, "[t]he concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand...." 821 F.2d at 123.

■ The district court had before it evidence that appellees expended $48,031.33 in the period between June 12 and June 30, 1987, opposing appellants' motion for injunctive relief. Finding that a considerable amount of the work performed by appel-

---

7. In *Bergen,* the court premised its exercise of power on the existence of admiralty jurisdiction, rather than on the existence of diversity under its analysis of § 1332(c). *Bergen Shipping Co. v. Japan Marine Services Ltd.*, 386 F.Supp. at 434.

8. Judge Pratt's reliance upon *Chok v. S & W Berisford, PLC,* 624 F.Supp. 440 (S.D.N.Y.1985) is misplaced. In *Chok,* defendants moved for

imposition of sanctions alleging that the action "could only have been brought for 'an improper purpose such as to harass or to coerce unnecessary delay or needlessly increase the cost of litigation.'" *Id.* at 441. The court in *Chok,* did not consider the adequacy of plaintiffs' prefiling examination of the law. Consequently, that case is of little relevance to our determination.

lees could be used in related court actions, the court declined to impose as sanctions the full amount of the costs incurred. Instead, Judge Leisure, after considering the nature of the violation of Rule 11 and the context in which it arose, with some reticence, imposed sanctions against counsel in the sum of $10,000. We cannot conclude that this amount exceeds "the outer limits of the range of choices appropriate to the issue...." Accordingly, Judge Leisure did not abuse his discretion in fashioning the sanction.

Appellants' final argument is that the district court should have dropped Maryland Navigation from the litigation and retained jurisdiction over the case. But Judge Leisure, during the June 30 hearing on the preliminary injunction application, specifically asked Golub whether he would be willing to strike Maryland as a defendant in the action to preserve diversity. Golub refused, arguing: "If we drop Maryland—the title to the ship is now in Maryland's name—I don't know how we could get any relief against [them]." Research reveals no precedent that indicates that it is error for the court to fail to dismiss a party from an action so as to preserve diversity despite the plaintiff's own choice to retain that party and in the absence of any motion to have that party removed.

Whether sanctions under Rule 11 may be imposed for an attorney's failure to conduct a proper pre-trial inquiry into the court's subject matter jurisdiction is a question that is quite distinct from the decision to impose sanctions for a frivolous appeal under Rule 38 Fed.R.Civ.P. We do not believe that Rule 38 sanctions are warranted here.

The quality of Justice depends upon our ability to control the flood of litigation. Rule 11 requires that members of the bar avoid haphazard, superficial research. That requirement places the responsibility for properly invoking the power of the court on counsel as officers of the court. On these facts, that standard simply has not been met. Accordingly, we affirm.

GEORGE C. PRATT, Circuit Judge, dissenting:

In this case the majority upholds a sanction against an attorney for wrongly claiming federal jurisdiction even though he asserted a plausible view of the law in a complicated and as yet unsettled area of diversity jurisdiction. The majority implicitly holds that dicta in one of our previous decisions, which expressly left open the issues raised by Golub, can somehow be read as a "holding" of this court which "established beyond cavil" that the argument advanced by Golub stood absolutely no chance of succeeding. Because I believe that Golub's jurisdictional theory rests on a sensible, albeit erroneous, reading of the diversity statute, is supported by ample authority, and has never been rejected or even squarely addressed by this court, I must respectfully dissent from this harsh application of rule 11.

At the outset, it is important to identify the conduct for which Golub was and was not sanctioned. First, he was *not* sanctioned (although perhaps he should have been) for allegedly serving on his adversary a copy of an order to show cause that left in a temporary restraining order that had been deleted by the court.

Second, he was *not* sanctioned for failing to observe the black-letter proposition that an alien party cannot acquire diversity jurisdiction over another alien party. Rather, he *was* sanctioned for arguing that Maryland Navigation, a corporation chartered in Liberia but having its principal place of business in New York, should be considered a citizen only of New York for diversity purposes, thus preserving federal jurisdiction over the action.

But Golub's argument flows readily from the language of the diversity statute. Under 28 U.S.C. § 1332(c), a corporation is deemed "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business". The statute defines the term "State", with an upper-case "S", to exclude foreign nations, 28 U.S.C. § 1332(d), and consistently refers to foreign nations by the use of the term "state", with a lower-

case "s". 28 U.S.C. § 1332(a)(2), (3), (4). The two versions of the term are not interchangeable.

A straightforward reading of the statute would therefore make Maryland Navigation a citizen of New York, the "State" where it has its principal place of business, but not of Liberia, the place of its incorporation, because Liberia by definition is not a "State" of the United States in which Maryland Navigation is incorporated.

The majority nevertheless suggests that a "cursory review" of hornbook law would have demonstrated the fallacy of this argument. Although I can only guess as to what, if anything, superficial research would uncover, my own reading of the treatises cited by the majority reveals that they support Golub's position far more than they undermine it. For example, Professors Wright, Miller and Cooper argue that a plausible, and if applied to these facts, preferable reading of the diversity statute would

> treat the foreign corporation *as having a single domestic citizenship rather than dual citizenship*. This approach would be most appropriate when the alien corporation's principal place of business is in an American state. * * *

> Moreover, there may be affirmative reasons why Congress should provide a federal forum. For example, when the dispute between an alien and a foreign corporation with a principal place of business in the United States arises out of local activities, a federal court should be available.

13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3628, at 668–69 (2d ed. 1984) (citations omitted); *see also* 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice* ¶ 0.77[2.–3] (2d ed. 1988) (similar); Note, *Alien Corporations and Federal Diversity Jurisdiction*, 84 Colum.L.Rev. 177 (1984) (arguing in favor of a single-domestic-citizenship interpretation of diversity statute as applied to foreign-chartered, domestically-located corporations).

Notwithstanding the respectable authority supporting Golub's interpretation of the statute, the majority relies on an exaggerated reading of our *Venezolana* decision to justify the sanction. In that case, we held that the district court properly exercised its ancillary jurisdiction in deciding a counterclaim brought against a Venezuelan party by a Swiss corporation that had its principal place of business in New York, where federal jurisdiction over the principal action was properly founded on the Edge Act.

Without addressing the particular interpretation of the diversity statute that would have supported Golub's present claim for federal jurisdiction, we noted that two *other* approaches to the statute would have deprived the court of jurisdiction to hear the counterclaim if it had been independently presented. First, we suggested that § 1332(c) might not even apply to alien corporations, leaving intact the traditional rule that treated corporations as citizens only of their place of incorporation. Second, we stated that "[w]e need not reach the issue of whether or not 28 U.S.C. § 1332(c) applies to alien corporations," because even if we assumed that the statute did apply, and that it created *dual* citizenship, the company chartered in Switzerland would still retain its alien status despite its New York principal place of business.

Thus, in dealing with the problem of a foreign corporation having its principal place of business in this country, the *Venezolana* opinion discusses two possible resolutions: (1) citizen only of foreign state of incorporation and (2) dual citizenship. It fails to even mention, however, let alone clearly reject, a third possible interpretation of 1332(c) now advanced by Golub: citizen only of domestic principal place of business. I cannot understand how, years after the fact, we can fairly transform a brief section of casual discussion of two other issues into a full-blown "holding" of this court on the third issue; even less can I accept the conclusion that our earlier incomplete treatment of this subject not only had the supposed effect of clarifying this complicated, rarely litigated area of diversity jurisdiction, but also made any further argument on the subject sanctionable.

Ironically, less that two years before Golub commenced this action in the southern district, but five years after *Venezolana*, a different court in the southern district held that rule 11 was *not* violated where an attorney advanced an argument identical to the one sanctioned here. *See Chok v. S & W Berisford, PLC*, 624 F.Supp. 440, 443 (S.D.N.Y.1985). In *Chok*, Judge Sweet (who perhaps should understand the problem better than most since he was also the district judge in *Venezolana*) ultimately rejected the argument that a foreign-incorporated, domestically-based corporation should be deemed a citizen only of its domestic principal place of business; but he held that the attorney who asserted the argument could not be sanctioned because "due to the lack of uniform authority on the subject of the citizenship of alien corporations under § 1332(c), the action * * * was not brought without conceivable hope of success." *Id.* That case was not appealed, and this circuit has not, from then until now, otherwise addressed this diversity issue.

If rule 11 is to fulfill its purpose of deterring frivolous litigation, it is critical that courts articulate clear, objective standards by which attorneys can reliably measure their conduct and that we avoid the corrosive effect of arbitrary, seemingly contradictory applications of the rule. Here, identical arguments asserted in the same district were held in one case not to violate rule 11, but to "egregious[ly]" violate it in the next; yet the same body of appellate and statutory law was available to both courts. I fear the majority's ruling today may prove to be a step backward in the evolution of comprehensible and fair standards for applying rule 11.